74 So.2d 771 (1954)
GREENBERG
v.
NEW ORLEANS PUBLIC SERVICE, Inc. et al.
No. 20261.
Court of Appeal of Louisiana, Orleans.
June 21, 1954.
Rehearing Denied October 18, 1954.
*772 Alvin R. Christovich and William W. Ogden, New Orleans, for appellants.
Ralph N. Jackson, New Orleans, for appellee.
Before McBRIDE and REGAN, JJ., and REDMANN, Judge ad hoc.
REGAN, Judge.
The plaintiff, Louis J. Greenberg, the owner and operator of a 1950 Plymouth Coupe, initiated this suit against the defendants, New Orleans Public Service, Inc., and its motorman, George W. Baker, endeavoring to recover the sum of $13,864.95, representing damages for physical injuries, loss of earnings, medical expenses and property damages incurred as the result of a collision between his automobile and a St. Charles Avenue trolley car, in the neutral ground of Carrollton Avenue and Zimple Street, during a heavy fog, on January 14, 1952, at approximately 9:25 p. m.
The defendants answered and denied that they were guilty of any negligence and pleaded that the sole and proximate cause of the accident was the gross negligence of plaintiff and, in the alternative, pleaded his contributory negligence.
From a judgment in favor of plaintiff and against the defendants, in solido, in the sum of $6,172.83, defendants prosecute this appeal. Plaintiff has answered the appeal requesting that the judgment be increased to the amount prayed for.
Plaintiff related that on the night of the accident there was a heavy misty fog and he was driving his automobile in Zimple Street, away from Jefferson Parish, proceeding in the general direction of Broadway; when he arrived at the intersection of Carrollton Avenue and Zimple Street he brought his car to a stop, looked to his left or in the direction from which traffic was approaching and seeing none, proceeded to cross the ascending roadway of Carrollton Avenue and the first set of street car tracks located in the neutral ground thereof; he then looked to his right and observed, in the distance, a light moving in his direction; he drove upon the second set of tracks where he was forced to bring his car to a stop in order to permit traffic moving in the descending lane of Carrollton Avenue to pass; that during this interval a fast moving street car whose light, moments earlier, had attracted his attention, bore down upon and struck his automobile "dead center", pushing it a distance of from ninety-two to ninety-five feet; the ultimate result of which gave rise to this suit for personal injuries and property damage.
The essential aspect of plaintiff's version of the accident, that is, that the weather was foggy and misty and he was stopped in the descending car tracks awaiting the passage of Carrollton Avenue descending automotive traffic when his automobile was struck by the trolley car, is substantiated by one witness, John Jones, a pedestrian, who was 150 feet away, but faced the situs of the accident, while he was walking along the sidewalk adjacent to Carrollton Avenue.
The defendants' version of the manner in which the accident occurred emanates from the motorman, through the medium of a deposition, who immediately prior to the trial was confined to the tubercular ward of the Charity Hospital. In substance he related that while a "light fog" prevailed in this section, his vision was not impaired thereby; his trolley car was descending Carrollton Avenue or moving away from St. Charles Avenue at a speed of between twenty and twenty-five miles per hour and that at this speed the car could be stopped within one hundred and twenty-five feet; (however, defendants' expert, R. B. James, later corrected the braking distance on dry *773 tracks at twenty miles per hour to two hundred feet) that he habitually maintained a proper look out and when he was seventy-five feet from Zimple Street he looked both to his left and right, observed nothing that would obstruct a safe crossing; however, when he was about twenty-five feet from Zimple Street he observed plaintiff's car enter the neutral ground at a fast rate of speed, he instinctively "threw off his power, sounded his gong" and applied the air brakes, but despite his efforts the street car struck the automobile "dead center" and pushed it about "75 feet" from the situs of the collision.
The essential aspect of the motorman's version of the accident is substantiated also by one witness, Dan Nelson, a passenger of the trolley car. He related that visibility was fairly clear and when he first observed plaintiff's car it was in Zimple Street ten or fifteen feet from the Jefferson Parish side of its intersection with Carrollton Avenue moving at a speed of fifteen to twenty miles per hour; it failed to stop at the intersection, but drove upon the neutral ground, crossed the first set of car tracks and entered upon the second set thereof, at which time, both moving vehicles collided.
Several other witnesses appeared on behalf of plaintiff and defendant, none of whom actually observed the occurrence of the accident, but all of whom assisted the court in formulating or completing the painting of the factual picture upon which the trial court's judgment was predicated, and both plaintiff's and defendants' witnesses, who entered the scene of the accident, subsequent to its occurrence, all agreed that the weather was foggyonly the severity thereof is disputed.
The foregoing elucidation reveals that only questions of fact were posed for the trial court's consideration. The judge thereof was of the opinion, as revealed in his written reasons for judgment, that the plaintiff stopped on the tracks, observed the headlight of the tro'ley car through the fog some distance away, realized that he was in a position of danger and that he would have driven off the track if his passageway had not been obstructed by the automotive traffic descending Carrollton Avenue. Thus the situation in which plaintiff found himself was not due to lack of care on his part. On the other hand, the trial court also found as a fact that the weather was foggy, visibility was bad, the tracks were wet and the trolley was moving twenty to twenty-five miles per hour, which speed required in excess of two hundred to two hundred and twenty feet in which to stop; and that the motorman failed to observe plaintiff's stationary vehicle on the tracks until the trolley car was within twenty-five feet thereof. Therefore, the proximate cause of the accident was the motorman's negligence in not exercising that measure of care which the exigencies of the occasion required.
The question which this appeal has posed for our consideration is whether that finding is so erroneous and unsupported by the evidence as to warrant reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a laborious discussion of the conflicting testimony or of endeavoring to reconcile the respective litigants' version of the accident. The trial court accepted the plaintiff's version thereof and our analysis of the record convinces us that the evidence preponderates in favor of the plaintiff and the judgment is, therefore, correct.
The record reveals that plaintiff, a man sixty years of age, incurred the following injuries as a result of the accident; general severe contusions to the right chest and area of the right hip; a punched-out wound of the right temple area; fractures involving the fourth, fifth and seventh ribs on the right side posteriorly, with the fifth and seventh ribs broken in two places. He was hospitalized from January 14, 1952, the date of the accident, to January 23, 1952 or a period of nine days and remained at home under his physician's care until February 29, 1952, or for a period of about six weeks. Two surgical chest binders or braces were prescribed, which plaintiff wore, according *774 to his testimony, day and night for a period of from three and one-half to four months. Medical care otherwise consisted of bedrest and symptomatic treatment for the relief of pain. The punched-out wound of the temple area, which was sutured the night of the accident, left a visible scar which is circular in character covering an area of approximately a centimeter in diameter.
For these physical injuries the trial judge awarded the sum of $3,500 which, in our opinion, is inadequate and should be increased to the sum of $4,500.
The plaintiff was awarded the sum of $682.58 for medical expenses, which are amply supported by the record.
The plaintiff's wife prior to the accident was employed by the Tujague Company and was remunerated therefor at the rate of $315 per month. It was necessary during his illness for her to relinquish this employment for a month and a half in order to maintain the existence of his businessa service station, and plaintiff was, therefore, allowed the sum of $472.50 which we believe to be correct.
As a result of the accident plaintiff's 1950 Plymouth Coupe was almost completely destroyed, however, it possessed a salvage or trade-in value of $274.25. The trial judge awarded the plaintiff the initial purchase price of the car, $1,792, less the salvage or trade-in value of $274.25, or the sum of $1,517.75. In this he was in error. The jurisprudence is settled to the effect that where the car is obviously totally destroyed or so badly damaged that the cost of repairing it would exceed the value thereof, the loss is determined by ascertaining the value of the car as of the date of the accident less the salvage value thereof. During oral argument in this court counsel for the respective litigants were aware of this jurisprudence and, accordingly, entered into a stipulation which was filed here fixing the value of the car as of the date of the accident, January 14, 1952, at the sum of $1,174.25, less the salvage value thereof or the sum of $900.
For the reasons assigned the judgment appealed from is amended by increasing the amount thereof from $6,172.83 to $6,555.08, and, as thus amended it is affirmed.
Amended and affirmed.