158 So.2d 365 (1963)
Pinanko ("Pin") HENDERSON, Plaintiff-Appellee,
v.
The TRAVELERS INDEMNITY COMPANY et al., Defendants-Appellants.
No. 10026.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1963.
Rehearing Denied December 6, 1963.
*366 Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellants.
Robinson & Atkins, Homer, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
*367 AYRES, Judge.
This action for damages arose out of a collision between plaintiff's Chevrolet and defendant John R. Malone's Cadillac, at the intersection of South Main and West Third Streets in the Town of Homer.
Negligence charged to defendant included his failure to accord plaintiff the right of way, or to maintain a proper lookout, or to keep his vehicle under control, in entering the intersection (a blind corner) at an excessive rate of speed, and in accelerating his speed in order to "beat" plaintiff across the intersection. The defendants, Malone and his public liability insurer, contended that Malone had the right of way and, moreover, had preempted the intersection, and charged plaintiff with negligence, or, in the alternative, contributory negligence constituting a cause of the accident. Specified were plaintiff's alleged failure to accord defendant the right of way, to keep a proper lookout, or to keep his vehicle under control, or to take evasive action to avoid the accident.
After trial, plaintiff was found to have entered the intersection on a green light and that his actions were those of a reasonable and prudent operator. To the contrary, it was found that defendant Malone, whose lateral vision was impaired by fog on his windows and windshield, was negligent in entering a blind intersection with the traffic light, as to him, out of order, and consequently not working, without his first having ascertained that he could negotiate the intersection in safety to himself and to normally operating traffic on the intersecting street, which had a favorable signal and a preference and priority. Accordingly, there was judgment in plaintiff's favor from which defendants appealed. Plaintiff, by answer to the appeal, has prayed for an increase in the award.
Material undisputed facts, or about which there could be little, if any, controversy, may be briefly stated. The movement of traffic through the intersection at the scene of the accident is controlled by an electric light of the usual and customary design, suspended above the center of the intersection. Plaintiff was proceeding easterly on South Main Street; defendant, south on West Third Street. A church on the west side of West Third Street, facing north, covers the block alongside said street and extends to South Main Street. A "blind corner" therefore exists, particularly as to traffic southbound on West Third Street. Fog on defendant's car windows and windshield obscured or obstructed his view except through the area where his windshield wipers operated. The accident occurred in the southwest quadrant of the intersection. Following the accident, plaintiff's car came to rest facing west. Defendant's vehicle took and pursued a southeasterly course, striking a residence located at the southeast corner of the intersection. Plaintiff did not see defendant's car until the moment of the impact of the collision.
A controverted fact is that defendant Malone stopped at the intersection and looked for traffic before he entered the intersection. Defendant testified, however, that, when only three feet into, or one-eighth of the distance across, the street intersection, he saw plaintiff approaching it at a distance of 140 feet, whereupon he accelerated his speed in an effort to beat plaintiff across the intersection. With his windows and windshield fogged as they were, because of the fact, as defendant testified, that the car remained, during the previous night, unprotected from the weather, it is difficult to understand, with his restricted view, how he could see plaintiff's car a distance of 140 feet away and to his right. Moreover, the speed of plaintiff's vehicle would hardly be indicative that his car was such a distance away.
Defendant's primary complaint of error in the judgment appealed relates to the question of liability. This complaint is predicated upon the contention that plaintiff did not see defendant's car until the moment of the impact, and that plaintiff must, therefore, be found not to have kept or maintained a proper lookout. Such a conclusion does not necessarily follow. That plaintiff *368 had a favorable signal, a green light, is not disputed. Plaintiff, before reaching the intersection, ascertained that he had a favorable signal. He continued his observation of the light, mindful that it did not change, until he actually entered the intersection.
A motorist on a right-of-way street with knowledge of the location of a stop sign or that he has a favorable signal light, has a right to assume that any driver, approaching the intersection from a less favorable street, will observe the law and bring his vehicle to a complete stop, or will await a favorable signal before entering the intersection. Such motorist can indulge in this assumption until he sees, or should see, that the driver of the other car has not observed, or is not going to observe, the law. Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company of Chicago, 232 La. 831, 95 So.2d 328; Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339.
Plaintiff was shown to have been proceeding at a speed of 15-20 m. p. h., concededly a moderate and reasonable speed. He thus had his car under such control as to meet and respond to any hazard which might be expected under normal conditions, and this was all the law required of him.
With reference to a motorist proceeding on a favorable signal, it was pointed out in Youngblood v. Robison, 239 La. 338, 118 So. 2d 431, 434, that
"He was not obliged, * * * to turn his head in the direction of traffic approaching from his left or right, or from both left and right, to ascertain whether someone might violate the law by running the crossing on a red light. On the contrary, he had the right, under our jurisprudence, to assume that the law would be respected."
That plaintiff had the right of way was fully established. The signal light, as heretofore stated, was favorable to him. He had a right to rely upon it. Moreover, he was approaching the intersection from defendant's right. In the absence of the control of the movement of traffic by signal or otherwise, plaintiff had the directional right of way under the provisions of the Highway Regulatory Act. LSA-R.S. 32:237, subd. A; Montalbano v. Hall, La.App. 2d Cir., 1958, 108 So.2d 16, 19; Terrill v. ICT Insurance Co., La.App. 1st Cir., 1957, 93 So.2d 292, 295. Upon noticing the nonoperation of the traffic signal light to him, it became incumbent upon defendant driver to exercise extraordinary precaution before and on entering the intersection. Terrill v. ICT Insurance Co., supra; Ohio Casualty Ins. Co. v. Marquette Casualty Co., La.App. 3d Cir., 1962, 140 So.2d 750.
A point of law involved in these cases concerned the relative duties of two motorists converging on an intersection where the traffic light was green as to one and not functioning as to the other. It was held that the motorist entering the intersection on a green light was not guilty of contributory negligence with respect to a collision with an automobile driven from an intersecting street as to which the traffic light was not working, and that the motorist who drove into a blind intersection where the traffic signal was not working, without ascertaining whether the light was functioning for the intersecting traffic, was guilty of negligence.
Nor do we find any merit in the contention that defendant Malone preempted the intersection. As previously observed, defendant had barely entered the intersection, had proceeded only three feet therein, according to his own testimony, when he saw plaintiff, who had the right of way, approaching to his right. Instead of stopping, as he could have done if his speed was only five miles per hour, as he testified, he accelerated his speed and endeavored to beat plaintiff across the intersection. Defendant Malone could not, under these circumstances, have expected to enter and clear *369 the intersection without obstructing the normal movement of traffic therein; nor was there a normal or reasonable opportunity for him to do so. Under the right of preemption, a motorist approaching an intersection has the right of way over oncoming traffic only if he exercises the necessary precautions in determining that he can enter the intersection with a reasonable certainty of completing the crossing in safety. Butler v. O'Neal, La.App. 2d Cir., 1946, 26 So. 2d 753; Aucoin v. Houston Fire & Casualty Co., La.App. 1st Cir., 1950, 44 So.2d 127; Harris v. Travelers Indemnity Co. of Hartford, Conn., La.App. 2d Cir., 1954, 70 So.2d 235 (writs denied); Montalbano v. Hall, supra.
We are, therefore, in agreement with the conclusions reached by the learned judge of the trial court that plaintiff was not guilty of negligence constituting either a proximate or a contributing cause of the accident.
The evidence, however, is convincing of defendant Malone's negligence. He faced a signal light which, to him, was not in operation. He was thus under a duty to exercise special and extraordinary care. This, he failed to do. No effort was made by him to ascertain whether the light was functioning for traffic on the intersecting street or whether such traffic had a green light, as indeed it did have.
In the absence of appropriate signals governing the movement of traffic through intersections, plaintiff, as already observed, had the right of way. Nevertheless, and despite the fact that the defendant did not have the right of way, he proceeded into the intersection at a time when his view was obscured by fog and moisture on his windows and windshield. Defendant, while barely entering the intersection, as previously noted, observed plaintiff's approach at a time he admittedly could have applied his brakes and stopped, and, thus, could have avoided the accident. Instead of taking evasive action, defendant accelerated his speed, took a chance and risked an accident in his attempt to beat plaintiff across the intersection. Thus, it can be only concluded that defendant's negligence was the sole, proximate cause of the accident.
This appeal presents, finally for review, a question of quantum of damages. Plaintiff was removed from the scene of the accident to the Campbell-Gladney Clinic, located a half block away, and soon thereafter was transferred to the Homer Memorial Hospital where he remained under the care and treatment of Drs. James F. Gladney, Jr., W. P. Gladney, and Donald Haynes until December 16, 1961, when he was permitted to return home. Thereafter, he was treated as an outpatient by Dr. Haynes. For the purpose of consultation and treatment, Dr. D. F. Overdyke, Jr., an orthopedist, examined plaintiff on two occasions, February 9 and April 16, 1962. Dr. Carson R. Reed, Jr., an orthopedic surgeon, examined plaintiff once on April 28, 1962, at the request of the defendants.
On plaintiff's admission to the clinic and later to the hospital, he was experiencing severe shock, a concussion, and extremely low blood pressure of 72 over 50, which apparently induced temporary and intermittent unconsciousness. There were lacerations of plaintiff's face and scalp, bleeding internally, and a fracture of the sacrum, with an upward displacement of the interior two-thirds through the right sacroiliac joint of the right ilium, with a displacement from one-half to three fourths of an inch of the left public and ischial rami, and of the right fifth transverse process of the lumbar spine. Five ribs were also fractured. Arthritic changes were brought about, particularly in the area of the fifth transverse process. Irritation and permanent damage to the sciatic nerve resulted. Weakness of the nervous system was produced in the lower right extremity. A fusion of the right sacroiliac joint resulted in a loss of motion.
By reason of the injuries sustained, plaintiff lost a 20 percent disability of the body as a whole. That he suffered, initially and while in the hospital, severe, excruciating *370 pain, and pain and discomfort thereafter and to the date of trial seven months later, the record leaves no room for doubt. On leaving the hospital, it was necessary that plaintiff use crutches for an additional period of six weeks. He continued to experience pain and discomfort to a significant degree at the time of trial. A continuation of pain and discomfort may be expected for an indefinite period.
The award as made in the judgment appealed included special damages of $2,102.34, of which amount $500.00 was allowed for future medical expenses. Defendants attacked this award as speculative. That plaintiff must remain under medical treatment following the trial was amply shown. Dr. Haynes, a treating physician, made a "conservative" estimate of the requirements for future medical expenses. His testimony in this regard was not questioned at the time it was offered; nor was he cross-examined in connection therewith. The necessity for future medical treatment was amply established. Under these circumstances the allowance in accordance with the treating physician's testimony is not speculative or conjectural.
Plaintiff contends that he should have been granted an award for wages lost during the six months he was totally incapacitated. The record establishes that, during the period of total incapacity, plaintiff was paid his wages. His work was done through hired help and by the assistance of members of his family. There is no showing, however, of the amount plaintiff paid to have his work done. There is, therefore, no proof of the amount of loss plaintiff sustained in wages.
Defendant questions the award as to other particular items. From our review of these awards, it might well be that we would not, as an original proposition, have made the same determination as to each of these items precisely as made by the trial court, but, from our consideration of the entire record, we are not convinced there was error in the overall total award. The total fairly compensates plaintiff for his injuries, losses, and permanent disability. It is not excessive.
The judgment appealed should be affirmed, and it is so ordered at defendants-appellants' cost.
Affirmed.