BOLIN, Judge.
Mrs. Clara Smith, individually and as natural tutrix of her minor son, Don Rankin, sued the Employers Mutual Insur- *921 anee Company of Wisconsin and W. D. 'Snelling, d/b/a The Snelling Company, ‘Contractors, in solido, for damages allegedly resulting from personal injuries received "by Rankin when a motorcycle he was riding •collided with a truck owned by The Snel-ling Company and insured by Employers. From judgment rejecting her demands she ■appeals.
The accident occurred in July 1964 at approximately seven o’clock p. m., in the City •of West Monroe, Louisiana. Don Rankin, fifteen years of age at the time, was proceeding in a northerly direction on his Honda motorcycle on Cypress Street (which is also U. S. Highway No. 80). The street in this vicinity is a four-lane highway with the north and southbound traffic lanes being separated only by two yellow lines. Rankin was traveling in the outside lane, or the one next to the curb.
Curtis J. Smith was driving the truck-trailer unit in a southerly direction on Cypress Street and was occupying the lane ■of traffic next to the center line. He had momentarily stopped his unit preparatory to making a left or west turn into Claiborne Street which intersects Cypress Street at .an angle to the west. There is no traffic light or signal at this location. After his truck had been stopped for several seconds, in order to allow traffic to clear, Smith, ■with the left-turn indicators flashing, began to slowly turn the truck to the left. 'The turn was first begun while the truck was in the lowest gear possible. Fie testified that before beginning his turn he could see at least 300 feet to the south and saw no vehicular traffic approaching. After 'he had completed his turn and had maneuv■ered the entire truck into Claiborne Street, the trailer portion was struck in the right ■side at the “pull wheels” by the motorcycle driven by Rankin. Young Rankin was •severely hurt in the accident resulting in the present litigation.
There were four eyewitnesses to the accident. Smith, the driver of the truck, testified that he had his left-turn indicators on prior to and during the entire turning maneuver; he observed traffic in both directions and saw no one approaching for a distance of several hundred feet; he made the turn in a careful and prudent manner; when he first saw the motorcycle it was almost upon him and he immediately applied the brakes and stopped his truck. The only way he could account for the sudden appearance of the Rankin motorcycle was that it was being operated at an excessive rate of speed.
Murray Lee Youngblood, a fellow employee of Smith, was riding in the cab of the truck at the time of the accident. He testified he was also observing traffic in both directions and did not see the approach of Rankin. His testimony was, in all important details, the same as that of Smith.
Mr. Gene Lafayette, an employee at a service station located in close proximity to the accident, was also an eyewitness to the collision. He testified that he saw the truck come to a stop before making the left turn; it had its left-turn indicators on; the left turn was made very slowly and the truck was completely across Cypress Street and into Claiborne Street when it was struck in the rear portion by the motorcycle. Mr. Lafayette also expressed the opinion the motorcycle was traveling at an excessive rate of speed.
The only favorable eyewitness account presented by plaintiff was that of Don Rankin. He testified he had stopped his motorcycle at a blinking light not far south of where the accident happened at which time he noticed the truck stopped at the intersection. He stated he did not see any signal being given to indicate a left turn and he proceeded south believing the truck would not turn into his lane of travel; further that he was not driving at an excessive rate of speed; that the truck turned into his lane of travel and he was unable to avoid the accident.
A West Monroe policeman testified relative to his findings after the accident. He *922 said the truck had entirely completed its turn into Claiborne Street prior to the impact. He corroborated previous testimony as to the location of the accident, the point of impact, and other physical facts developed by the investigation. He also said he found approximately 32 feet of skidmarks left by the motorcycle.
Louisiana Revised Statutes 32:101 and 32:104 set forth generally the manner in which a motorist should make a left turn upon the public highways of Louisiana.
For written reasons the trial judge concluded defendant driver was free from fault and the accident was caused solely by the negligent operation of the motorcycle by Don Rankin. He found as follows:
******
“The evidence in this case is clear that had the plaintiff, Don Rankin, proceeded in his lane of traffic, north on Cypress Street, the accident would not have happened. At the time of the impact the entire truck and trailer was clear of Cypress Street and over into Claiborne Street. The truck and trailer did not make a short, sharp left turn into Claiborne Street. Highway 80 is a wide, four-lane highway at that point and in order to enter Claiborne Street, from the roadside sign indicated by the witnesses’ testimony, where the truck made its turn, the direction is comparatively straight on into Claiborne Street. The truck didn’t dart out in front of Rankin but was heavily loaded and proceeded from a stop into compound low, so Mr. Smith stated, into regular low and crept on across the highway into Claiborne Street. Had Don Rankin been keeping a proper lookout, he could have seen the truck and trailer. Had he had his motorcycle under control, the accident could have been avoided.
******
“In the Court’s opinion, the sole and proximate cause of the accident was the failure of Don Rankin to keep his motorcycle trader proper control and his failure to keep a proper lookout. Therefore, the demands of the plaintiffs are rejected at their costs.”
Our courts have enunciated a general rule that a left turn is not to be undertaken until a driver ascertains it can be made in safety and that such a maneuver is a most dangerous operation. However this rule is subject to the qualification that a motorist in making a left turn has a right to assume the oncoming and' following traffic will observe all the various duties imposed by law. A motorist is not required to wait until there is no traffic in sight before attempting to make a left turn; on the contrary, he has a right to move after he has made a careful and prudent survey of traffic conditions about him and reasonably believes, from such survey, that conditions warrant such action. See Breland v. American Insurance Company (La.App. 2 Cir., 1964) 163 So.2d 583 and cases there cited.
Rankin testified he saw the truck stopped before it ever began its left turn. The testimony shows that it took several seconds for this large vehicle to slowly make its left turn and get completely into Claiborne Street. It is therefore, obvious that Rankin did not continue to keep a proper lookout or that he was operating his motorcycle at an excessive rate of speed. We think the defendant driver did all that was required in the instant case. The evidence preponderates to the effect that he observed traffic for a distance of at least 300 feet to the south before making the left turn and observed nothing to warn him the turn could not be safely negotiated.
We conclude the trial judge was correct in deciding the accident was caused entirely by the negligence of Don Rankin and, accordingly, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.