LANDRY, Judge.
These consolidated cases arise from an intersectional collision between a left turning, southbound fire engine truck owned by defendant Scotlandville Fire Protection District Commission (Commission), being driven by the Commission’s employee, Donald Petrere, and a northbound Cadillac automobile owned and being driven by plaintiff Moses McDonald, the insured of plaintiff Service Casualty Company of New York (Service Casualty). The impact in question occurred at approximately 1:30 P. M., April 1, 1966, at the juncture of Scenic Highway (a four-lane north-south roadway) and 73rd Street, Baton Rouge, Louisiana. These intersection roadways form a “T-intersection”, in that 73rd Street runs easterly from Scenic Highway but does not extend westerly therefrom.
The trial court rendered judgment in favor of plaintiff McDonald against defendants Petrere and Commission in the sum of $22,500.00 for personal injuries and $3,-515.89 special damages. Plaintiff, Service Casualty, was granted judgment against both defendants in the amount of $3,910.00 pursuant to the subrogation of McDonald’s claim for damages to his automobile'.
Defendants have appealed contending (1) the trial court erroneously held Petrere liable for the accident (2) alternatively, failing to find McDonald guilty of contributory negligence barring his recovery as well as that of Service Casualty; (3) in the further alternative, failing to deny plaintiff’s recovery on the ground McDonald had the last clear chance to avoid the accident, and (4) in the final alternative, awarding plaintiff McDonald excessive recovery for personal injuries. Plaintiff McDonald has answered the appeal praying for an award for loss of earning capacity which was rejected by the court below.
We find the trial court correctly determined all issues raised by the parties to this litigation. Accordingly, we affirm the decision rendered below.
At the scene of the accident a neutral ground approximately 15 feet in width separates the northbound and southbound lanes of Scenic Highway; a break or gap there *326 in permits southbound motorists to turn left onto 73rd Street. Petrere, proceeding southerly in the inside southbound lane of Scenic Highway, stopped the fire engine completely within the neutral ground preparatory to making his intended left turn. Simultaneously, McDonald was traveling northerly in the outside northbound lane of Scenic Highway, at a speed of approximately 40 miles per hour, the legal maximum being 45 miles per hour. The impact occurred in the approximate center of the outside northbound lane of Scenic Highway, at which point the front of McDonald’s automobile struck the fire engine in the vicinity of its right door. The fire engine came to rest with its front wheels on the east curb line of Scenic Highway. McDonald’s vehicle left 42 feet of skid marks preceding the point of impact and came to rest virtually astride the center line of the two northbound lanes of Scenic Highway. There is no traffic signal at 73rd Street. One block to the south, however, the intersection of Scenic Highway and 72nd Street is controlled by an electric semaphore signal.
The gist of McDonald’s testimony is that he was proceeding along Scenic at a speed of approximately 40 miles per hour. At about the time he cleared the light at 72nd Street, he noted the fire engine pull into the neutral ground area and stop, its red light flashing. McDonald stated further that he continued his northerly travel until he observed the fire truck commence its left turn whereupon he immediately applied his brakes full force in a vain attempt to avoid a collision. He denied his attention was at any time diverted from the roadway.
Petrere’s testimony is to the effect he was returning to the fire station after having answered a call. He was in no particular hurry. As he approached 73rd Street traveling in the inside southbound lane, he came to a halt with his vehicle completely within the neutral ground area. His flashing red light was in operation but he was not sounding his siren. Petrere also stated he looked to the south and observed McDonald’s vehicle in the vicinity of the traffic light at 72nd Street and felt certain he had ample time to negotiate his intended left turn in complete safety. Consequently, he proceeded to turn, keeping his sight constantly on the oncoming McDonald car. As McDonald neared the intersection, Pe-trere noted McDonald was looking down at the seat of his vehicle as though fumbling with some object. According to Petrere, the McDonald vehicle appeared to be without a driver and he observed “oh, my God, he better raise up.” He stated further that McDonald did not look up until it was too late to avoid the collision. Petrere maintained there was nothing he could do to avoid the accident and that at the moment of impact the fire engine was completely across both northbound lanes of traffic.
Mark Gene Waddell, State Trooper, investigated the accident. He confirmed the position of the vehicles following the incident. Trooper Waddell also stated the McDonald automobile left 42 feet of skid marks before the point of impact. Wad-dell stated further that Petrere told him McDonald was looking downward toward the seat of his car immediately before the crash. He also related that physical evidence indicated McDonald attempted to swerve to his left to avoid the collision. According to Waddell, McDonald appeared to have been seriously injured. For this reason he made no attempt to question McDonald at the scene but rather first arranged for McDonald’s transportation to a hospital. Waddell further testified Petrere was the only witness who made a statement at the scene of the accident, Petrere’s story being essentially that he observed the McDonald car approximately 300 feet distant and proceeded to turn only because he felt he had ample time to do so without incident.
Louis P. Carroll, proprietor of a generator shop situated at the corner of 73rd Street and Scenic Highway, testified he was in front of his shop, about 60 feet south of the intersection. He was approximately forty to fifty feet from the street *327 facing southwesterly at about a 45 degree angle, seated in his boat in which he was installing a newly purchased outboard motor. Carroll also stated he observed the approach of the Cadillac which he was regarding with admiration. He conceded he never saw the fire engine until the moment of impact. Carroll further testified McDonald appeared to be approaching at a rapid rate of speed. He noted McDonald appeared to be “picking up something * * * and when he come up he come up right along even with me, and his brakes started squealing, and when it did I was looking around like that, and he went right into the fire truck, and that’s the first time I seen the fire truck and the first time I knew anything of what was going to happen.” Carroll further stated it was he who summoned the police but that he made no statement to the investigating officer. He explained that he did not come forward with his testimony until several months after the accident because no one questioned him following the accident and he was unaware an officer at the scene was attempting to obtain eyewitness accounts during the investigation that followed.
The trial court’s reasons for judgment appearing of record clearly reflect his acceptance of McDonald’s version of the accident and the conclusion that Petrere misjudged the proximity and speed of the approaching Cadillac when he commenced to turn left at this busy intersection situated on a main north-south traffic artery of the City of Baton Rouge. It further appears the trial court rejected Carroll’s testimony on the ground it did not accord with the physical facts rather than on the circumstance of his tardy revelation of his knowledge of the incident.
Primarily, appellants rely on that line of jurisprudence which holds the duty incumbent upon a left turning motorist is no greater than that' of reasonable care, Smith v. Employers Mutual Insurance Co. of Wisconsin, La.App., 179 So.2d 920, and that a motorist enjoying the right of way cannot nevertheless proceed into an intersection wherein an obvious hazard exists without being deemed guilty of contributory negligence, Singley v. Thomas, La.App., 49 So.2d 465. On this basis appellants argue Petrere had preempted the crossing at a time when he could reasonably anticipate completion of his turn in safety. According to appellants the sole proximate cause of the accident was McDonald’s traveling at an excessive rate of speed and failing to maintain a proper lookout by diverting his attention from the road ahead.
Conversely, plaintiffs maintain their right to rely on the rule that a motorist possessing the right of way may assume his superior status will be respected by vehicles turning from a straight line of travel. Breland v. American Insurance Company, La.App., 163 So.2d 583 (2nd Cir. 1964).
Additionally, plaintiffs invoke the well established principle that a left turning motorist is held to the highest degree of care to insure his intended maneuver may be made in safety without posing undue risk or hazard to oncoming traffic. See Bankston v. Bueche, La.App., 206 So.2d 532, and the several authorities therein cited. We believe that, from the innumerable instances in which the rule has been applied, it should be evident that a left turning driver is held to a high degree of care and vigilance should an accident occur while he is in the case of making such a move.
It is elementary that in cases of this character each must be determined in the light of its own peculiar facts and circumstances.
We concur in the trial court’s finding that the accident resulted solely from Petrere’s fault. In this regard we note that whereas some portions of Petrere’s testimony indicates McDonald was near the intersection of 72nd Street when Petrere commenced his turn, at other points Petrere seemed to indicate he was not certain as to the exact position of the McDonald car ex *328 cept that he felt McDonald was far enough distant that the turn could be made in safety. We also note Petrere’s testimony that he measured the distance between the centers of the intersections of 72nd and 73rd Streets and found it to be 290 feet. Traveling at 40 miles per hour, McDonald would be covering 59 feet per second. Consequently, if McDonald were in fact at the center of 72nd Street when Petrere began his turn, Petrere had only five seconds to negotiate his rather ponderous vehicle from a dead stop across and clear of both northbound lanes of Scenic Highway. We believe, as apparently did the trial court, that McDonald was north of the intersection of 72nd Street when Petrere commenced his turn. Under the circumstances we find no error whatsoever in the conclusion of the trial court that the sole proximate cause of the accident was Petrere’s attempting a left turn when the approaching McDonald vehicle was so near as to make such a maneuver dangerous.
We also find the doctrine of last clear chance is without application under the prevailing circumstances. It is settled law that the doctrine of last clear chance is applicable only when (1) plaintiff has placed himself in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) defendant could or should, by the exercise of reasonable care, have discovered plaintiff’s peril, and (3) defendant at the time could or should by the exercise of reasonable care, have avoided the accident. Newton v. Pacillo, La.App., 111 So.2d 895; Wells v. Meshell, La.App., 115 So.2d 648.
Applying the foregoing pertinent rule of law, we conclude, as did the trial court, there was nothing plaintiff McDonald could have done to avoid the accident. The trial court found in effect that McDonald reacted promptly upon observing Petrere start his left turn. The trial court’s reasons for judgment clearly indicate the lower court concluded Petrere commenced his turn when McDonald was so near the intersection McDonald could not avoid the collision. The trial court also rejected Petrere’s testimony that McDonald’s attention was diverted from the roadway but rather than McDonald was vigilant and alert and reacted immediately to the emergency presented. With these findings we are in agreement.
Considering now the question of quantum, plaintiff was hospitalized immediately upon examination by Dr. Louis J. James in the emergency room of the Baton Rouge General Hospital where plaintiff remained for 32 days. Dr. James testified plaintiff sustained lacerations of the face and head causing permanent scarring of the face between his eyes and also on his nose and upper lip. In addition plaintiff sustained scarring injuries to his knees. Dr. James also stated X-ray examination revealed other injuries which prompted the calling of Dr. Alvin Stander, Orthopedic Surgeon.
Dr. Stander testified he treated plaintiff for a fracture of the left acetabulum or socket of the left hip. The fracture required traction for three weeks followed by continued limitation of motion of the socket for some time thereafter. Following several months treatment Dr. Stander concluded maximum recovery had been attained, leaving plaintiff with a 15% permanent disability of the left hip. Dr. Stander’s diagnosis of residual disability was based on a finding of continued limitation of motion and ability to externally rotate the affected joint. Dr. Stander was also of the opinion that plaintiff, who is 44 years of age, will experience some limitation of physical activity as a result of his injuries.
Dr. Valerian E. Smith, DDS, testified his examination of plaintiff revealed the loss of five teeth and damage to two or three others. In addition to immediate treatment of plaintiff’s oral injuries, Dr.. Smith fabricated a five unit permanent bridge to replace the lost teeth and also repaired the teeth damaged.
Plaintiff, who operates a bar and cafe, testified he suffers pain from his hip *329 injury and is unable to stand for long hours without suffering discomfort. He also stated he is unable to provide as efficient service to his customers as before because of his inability to move about with his former degree of rapidity. Considering the nature and extent of plaintiff’s injuries, and the residual disability resulting therefrom, we find no error in the sum awarded plaintiff McDonald for personal injuries.
There remains McDonald’s claim for additional recovery for alleged loss of earning capacity. Plaintiff presented the testimony of Dr. John W. Chisholm, Professor of Economics, Louisiana State University. Based on an assumed 15% disability of plaintiff’s hip, and using plaintiff’s life expectancy of 28.67 years, Dr. Chisholm used as a base figure 15% of plaintiff’s income. The figure thus determined was employed in an intricate formula to determine the current value of plaintiff’s anticipated earnings. In other words, according to Dr. Chisholm, he thusly ascertained that sum which, if presently granted, would over plaintiff’s life expectancy afford that return which plaintiff could have earned in that same period of time. Predicated on an involved formula which we confess we do not thoroughly grasp, and which appears to make numerous assumptions as to earnings on investments, purchasing power of the dollar and the anticipated effects of inflation, Dr. Chisholm calculated plaintiff’s loss of earning power to be $28,-649.00. As did the Court below, we find Dr. Chisholm’s testimony highly conj ectural and speculative to say the least. Moreover, the record shows that in 1965 plaintiff’s income was in excess of $2,000.00; in 1966 (the year of his injury) it was $8,938.00, and in 1967 it was $9,297.00. Considering the foregoing, we find the trial court correctly held plaintiff failed to carry the burden of establishing by a preponderance of evidence the loss of earning power asserted. On the contrary, it would appear plaintiff’s earnings have increased since his injury.
Accordingly, the judgment of the trial court is affirmed, all costs to be paid by defendants Donald Petrere and Scotland-ville Fire Protection District Commission.
Affirmed.