361 So.2d 887 (1978)
Francis Louis FOLSE et al.
v.
Nicholas E. FAKOURI et al.
No. 8987.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1978.
Writ Granted October 26, 1978.
Johnston & Duplass, Robert M. Johnston, New Orleans, for defendants-appellants.
Offices of Frederick J. Gisevius, Jr., Frederick J. Gisevius, Jr., New Orleans, for plaintiff-appellee.
Before REDMANN, STOULIG and SCHOTT, JJ.
SCHOTT, Judge.
Defendants have appealed from a judgment based on a jury verdict which was returned on special interrogatories. Specific amounts were awarded for past and future medical expenses and property damage and $150,000 was awarded as general *888 damages, but defendants have not made an issue of these items. At issue here are awards of $47,000 for past loss of wages and/or earning capacity and $100,000 for future loss of earning capacity.
In addition, defendants have specified errors in the award of the judgment as against Clover Farm Creamery, Inc., and the partnership of Clover Farm Creamery, and in the trial judge's charge concerning the inability of some of the defendants to respond in damages.
This case arose out of an accident which occurred on April 20, 1971, between a school bus owned and operated by plaintiff Folse and a truck operated by John R. Mayer. Suit was filed on January 20, 1972, against Nicholas E. Fakouri, Mazie Bertinot, Mayer and the Hartford Accident and Indemnity Company. Fakouri and Bertinot were referred to in the petition and citations as "d/b/a Clover Farm Creamery and Greenspot of Opelousas, La." It was alleged that Mayer was an employee of Fakouri and Bertinot, d/b/a Clover Farm Creamery, etc., and he was operating their truck with their permission so as to be an omnibus insured under their policy with Hartford. Plaintiffs subsequently joined two additional defendants, namely, Greenspot of Opelousas, La., and Clover Farm Creamery, Inc., both corporations based on allegations that Hartford was also their insurer, that Mayer was also their employee. Once again the prayer and the citations, in connection with the supplemental and amending petition, was served upon Fakouri and Bertinot, d/b/a Clover Farm Creamery and Greenspot of Opelousas, La.
The answer was filed by Fakouri and Bertinot, d/b/a Clover Farm Creamery, along with the two corporations, in which the individuals admitted that they were doing business as Clover Farm Creamery, that there was a collision between the school bus "and the vehicle owned by Clover Farm Creamery (Fakouri and Bertinot)," and that Mayer was an employee of Fakouri and Bertinot, d/b/a Clover Farm Creamery, in the course and scope of his employment at the time of the accident and covered by the Hartford policy. They made similar declarations in response to a petition of intervention filed by the subrogated workmen's compensation insurer of plaintiff.
In a supplemental and amending petition filed to increase the amount of damages sought, defendants Fakouri and Bertinot were once again sued and cited as "d/b/a Clover Farm Creamery and Greenspot of Opelousas," and an answer was filed by them in that capacity. In other pleadings, motions and interrogatories, they appeared in the same capacity. In this setting the case went to trial on December 1, 1975. Shortly after the trial commenced, plaintiff's counsel made the following statement:
". . . If your honor please, we would also like the record to show that we have filed in the record, your Honor yesterday, I did not mention it at the time of filing our motion, but in our pre-trial that we held yesterday morning, we offered a motion orally and stated that we had it in writing to make the partnership by itself by its name a part of the pleadings, to amend it since it now appears that instead of the partnership just the two parties, it is a partnership of more than two parties and that the truck itself was owned in the name of the creamery and it is now shown that this is a partnership, the partnership by its name by operation of law according to the pleadings."
Thus, for the first time plaintiff attempted to make a partnership, Clover Farm Creamery, a party to this lawsuit. The court made the following disposition of this motion:
"The Court, in connection with that matter, will make a quick reference in connection with the partnership. There has been an answer in a judicial admission that the truck was owned. One of the answers that I saw according to the pleadings filed that the truck was owned by Clover Farm Creamery, it does not say Inc., does not say Green Spot of Opelousas, Inc., I believe that is sufficient to bring that partnership. I don't see there is a problem. The Court is going to take the fact that there is a pleading in the *889 record and we are going to go from there."
The judgment was in favor of plaintiffs and against Fakouri and Bertinot "individually and as d/b/a Clover Farm Creamery and the partnership of Clover Farm Creamery, itself, and Clover Farm Creamery, Inc." along with Mayer and Hartford.
It appears from the record that Clover Farm Creamery was a partnership consisting of Fakouri and Bertinot along with one Carolyn Bertinot Fakouri, the latter owning in excess of 21% and never having been made a party to these proceedings.
As can be seen from the foregoing detailed recitation of the procedural background of this case, Fakouri and Bertinot were sued under a trade name pursuant to LSA-C.C.P. Art. 736. They were also sued individually, but at no time was the partnership sued as such and no mention was made of it until the trial of the case had already begun. Under C.C.P. Art. 737 a partnership has the procedural capacity to be sued in its partnership name. Furthermore, C.C.P. Art. 1201 provides that citation and service are essential in civil actions, and without them all proceedings are absolutely null unless the defendant expressly waives citation and service in writing.
The trial judge was apparently convinced that there had been some sort of waiver on the part of the partnership because of the answer that the truck was owned by Clover Farm Creamery, but an analysis of those pleadings discloses that all pleadings were filed by the individuals, Fakouri and Bertinot, and at no time was the partnership even mentioned in any of the pleadings.
In Stone v. Stone, 293 So.2d 523 (La.App. 4th Cir. 1974) we were confronted with a similar situation and concluded that the judgment against the partnership was not valid in view of the failure to make it a party to the proceedings in accordance with law. The same result obtains in the instant case.
We have considered the result of this conclusion on the efficacy of the judgment against the individuals, Fakouri and Bertinot, because C.C.P. Art. 737 also provides that the partners of a partnership may not be sued on a partnership obligation unless the partnership is joined as a defendant. If the partnership employed Mayer and owned the truck it would appear that this obligation was a partnership obligation, but when Fakouri and Bertinot stated in their answer that they owned the truck and employed Mayer this constitutes a judicial admission on their part and a waiver of any objection they might have had to the action proceeding against them despite the absence of the partnership.
Defendants object to the jury instructions because the jury was not told that they consider the ability of the individual defendants to pay in considering a damage award. This is a case where Hartford's policy had limits of $100,000, so that there was individual exposure in view of the seriousness of the injuries sustained by Folse. However, we do not find that the instruction, when taken as a whole, was improper. The jury was instructed "to take into consideration the ability of each defendant to pay in considering the damage award," and that the financial ability of the defendant is a circumstance "which may be considered" by the jury. The court then went on to discuss the equitable rule which allows a defendant to introduce evidence of his ability or lack of ability to pay a money judgment and he instructed the jury "you should consider this evidence, together with the plaintiffs' evidence" in assessing damages. We have concluded that the instructions taken as a whole were correct.
We come now to the question of the amount of damages awarded for past loss of wages and/or earning capacity and future loss of earning capacity.
At the time of this accident, plaintiff was a 50-year old school bus driver. There is no question but that he is permanently and totally disabled as a result of the accident. He employed others to drive the bus until October, 1972, when his wife began to drive the bus and she continued to do so until the *890 time of the trial. Under the arrangement with the school board plaintiff was paid a salary to drive the bus as well as mileage for the use of the bus. He testified that he also earned about $3,000 per year from mechanical work consisting of $1800 for the work that he did on his own bus and two automobiles, and $1200 for work he did for others.
Before the accident his wife had been employed. She left her job in order to take over the driving of the bus, beginning in 1972. Check stubs and testimony indicated that plaintiff earned in 1970 $120 per week with the Royal Sonesta Hotel and a total of $2858 from school bus operation for that year when he apparently started driving. In the meantime, his wife, in 1970, was employed by Ochsner Foundation Hospital and earned approximately $175 every two weeks. At the end of 1970, she took a job with a supermarket, earning approximately $70 per week. Income tax returns for 1971, 1972, 1973 and 1974 were placed in evidence. On the 1971 return plaintiff reported earnings from the school board of slightly over $12,000 and his wife, from the supermarket, of almost $2500. After deducting the expenses of the school bus operation, the couple reported an adjusted gross income of $10,576.09. In 1972, 1973 and 1974 the couple reported income of $13,852, $12,406, and $11,371 respectively.
Herman J. Biscoglia was called as an expert witness qualifying as a consulting actuary. He testified that plaintiff's life expectancy at the time of the accident was 26 years and 22.8 years at the time of the trial. His work life expectancy at the time of the accident was 18.1 and 14.8 at the time of the trial. He testified that the average salary of bus drivers throughout the United States was $10,174, and using that figure he estimated plaintiff's loss of income from the date of the accident to the date of the trial as $47,479 and his future loss of earnings to be $122,157. There were other figures given to Biscoglia, such as $5,000, $12,000, and $14,000, but the jury apparently accepted and used the $10,174 average bus driver figure since their verdict approximates the loss of earnings figures computed by Biscoglia corresponding to that figure.
Defendants contend that plaintiff did not lose any earnings because his wife simply assumed the driving of the bus after the accident. They point to the income tax returns as proof that plaintiff and his wife suffered no loss of earnings whatsoever, especially since plaintiffs projected that their 1975 earnings would exceed $14,000. In effect, they dispute the legality of an award for loss of earning capacity under circumstances where the community between plaintiff and his wife had no loss of earnings. In support of their position they refer to the cases of Borde v. Travelers Insurance Company, 281 So.2d 797 (La.App. 3rd Cir. 1973); McDonald v. Scotlandville Fire Pro. Dist. Com'n., 222 So.2d 324 (La. App. 1st Cir. 1969); Henderson v. Travelers Indemnity Company, 158 So.2d 365 (La.App. 2nd Cir. 1963), and Greenburg v. New Orleans Public Service, 74 So.2d 771 (Orl.App. 1954). In the Borde case the pertinent issue was the husband's claim for the loss of his wife's earnings as theatre manager. The evidence showed that prior to her accident she had been employed as the manager and following the accident nothing was awarded for her loss of $75 per week for 13 weeks. She received half of her pay as sick pay for nine weeks, and additionally her husband was substituted as manager and received the full pay until his wife returned to work. During the three months she was off the job she continued to do the book work. Plaintiffs argued that defendants were not entitled to the credit for the fact that Mrs. Borde's husband took over his wife's work as manager, but the case turned on the fact that both Mr. and Mrs. Borde were performing the work as manager, both before the accident and during her three month period of disability, and plaintiffs were not entitled to an increase in the award. Insofar as we differ from it we decline to follow the Borde case. In the McDonald case, that issue was plaintiff's claim for increase in the award for alleged loss of earning capacity. The court did not hold that loss of earning capacity was not *891 compensable but rejected McDonald's claim because of the intricate and apparently confusing testimony of an economist on whom plaintiff was relying to support his claim. The court concluded that this economist's testimony was highly conjectural and speculative. In the Henderson case, it was the plaintiff again who was attempting to increase the award, and in rejecting this contention the court noted that during his period of incapacity the plaintiff was paid his wages. Although his work was done through hired help and by the assistance of the members of the family there was no showing of the amount plaintiff paid to have the work done. Thus, the court concluded there was no proof of the amount of loss plaintiff sustained in wages. Finally, in the Greenburg case, our predecessor court found that a judgment which allowed plaintiff to recover the amount which she lost in wages from her job for a month and a half while she ran the filling station owned by plaintiff during his illness was correct.
We fail to see where these cases afford any consolation to defendants in this case. The last cited case would authorize the jury to consider the amount Mrs. Folse lost from her previous employment in formulating an award for Mr. Folse. The McDonald case specifically recognized the right of a plaintiff to recover for loss of earning capacity. This case, along with Borde and the Henderson case were all affirmed because there was no evidence to support the additional sums which plaintiff was seeking.
In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), the court held that the injured party is entitled to be compensated in damages for decreased earning capacity and rejected the measure of such damages as mathematical decrease in the wages of the individual.
There is a difference between the quality of proof necessary to sustain a judgment for past earnings lost as compared to future loss of earnings. In Robinson v. Graves, 343 So.2d 147 (La.1977), the court pointed out that future loss of earnings cannot be calculated with absolute certainty and that such damages are somewhat speculative. Thus, there is some discretion left to the trier of fact which prevents an appellate court from substituting its own judgment simply on the basis that it believes a different award would be more appropriate. However, we do not find that the trial judge has the same discretion in the matter of the past loss of earnings, for which plaintiff was awarded $47,000, necessarily based on annual earnings of $10,000.
The only evidence before the jury as to the $10,000 figure was the testimony of the actuary to the effect that this was the average bus driver's salary in the United States. But this average figure has no probative value as to plaintiff's earnings. The average figure is based on drivers all over the country, of all ages and operating under a variety of arrangements with their employers. If an average could be used at all a more specific and pertinent group of drivers would have to be studied to devise an appropriate average.
After the accident, plaintiff continued to own the bus and would continue to be paid mileage for the use of his bus by the school board. Since he could no longer drive the bus he is entitled to compensation for the salary he would pay others to drive. This includes his wife, who was only available because she gave up another job. She testified that the salary of the driver in 1971 was $363 per month and in 1975 $583 per month, so that the salary increased $55 per month for each year. The salary is a nine months' salary; La.R.S. 17:496. If we allow plaintiff $2178 for six of the nine school months of 1971, $3762 for 1972, $4257 for 1973, $4752 for 1974, and $5247 for 1975, we reach a total of $20,196 in past loss of earnings for driving the bus. Plaintiff also testified that he lost $3,000 in earnings as a mechanic of which $1800 was for working on his own vehicles and $1200 on those of others. Even if we allowed him the full $3,000 for the four years and eight months involved we would still not reach the total of $47,000 awarded to him. In any event, out of the $3,000, we see no basis for awarding him loss of mechanic's fees for work on *892 his own vehicles in view of his testimony that the bus required no repairs but was still under warranty for the year following the accident and his failure to produce any figures whatsoever as to the amounts he spent to have mechanical work done on the bus and his two automobiles because he was unable to work on these vehicles himself. Allowing him $1200 a year for the four years and eight months between the time of the accident and the date of the trial he would be entitled to $5600 which, when added to the $20,196 already discussed, totals $25,796. In order to provide some compensation for the nebulous loss of mechanical fees on his own vehicles we would round this figure to $27,500 as the absolute maximum we can find supported by the evidence.
As we have already pointed out, the jury apparently used the economist's figure of $10,000 annual earnings to arrive at past as well as future loss of earnings. Since we have concluded that this error requires a reduction in the award for past loss of earnings, the same logic requires a proportionate reduction in future loss of earnings. Thus, this figure will be reduced to $58,500.
Accordingly, the judgment in favor of plaintiffs against the partnership Clover Farm Creamery is reversed and set aside and their suit is dismissed against this particular defendant.
That portion of the judgment in favor of plaintiff, Francis L. Folse, and against defendants, John R. Mayer, individually, and Nicholas E. Fakouri and Mazie Bertinot, individually, and as d/b/a Clover Farm Creamery and Clover Farm Creamery, Inc., (for the excess over $100,121 paid by an insurer) is amended to reduce the principal amount of that award to $166,805.81.
In all other respects the judgment is affirmed.
REVERSED IN PART, AMENDED IN PART AND AFFIRMED.