KLEES, Judge.
Plaintiff-appellee, Hilda Allen filed suit against Alvin Thomas Ball and his automobile liability insurance carrier alleging that she sustained personal injuries in an automobile accident that occurred on December 29, 1979. Thereafter, plaintiff supplemented her petition joining as a defendant, Casualty Reciprocal Exchange, her own automobile liability insurance carrier, alleging that Alvin Thomas Ball was an underin-sured motorist.
Trial on the merits was had and a judgment was rendered in favor of the plaintiff and against defendants, Alvin Ball and Liberty Mutual Insurance in the sum of Ten Thousand and no/100 ($10,000.00) Dollars (Liberty’s policy limits) and against defendant-appellant, Casualty Reciprocal Exchange, in the amount of Four Thousand Eight Hundred Fifty-Seven and 20/100 ($4,857.20) Dollars, together with interest and costs.
Following the rendition of judgment, the plaintiff settled with defendants, Ball and Liberty, and dismissed, with prejudice, her claim against those parties. The instant appeal is taken solely by defendant-appellant, Casualty Reciprocal Exchange, and is directed to the propriety of the Trial Court’s award to plaintiff of Five Thousand Seven Hundred Dollars for “loss of income”.
At the time of the accident, Hilda Allen was employed by Security Industrial Insurance Company as a “debit manager”. This job involved soliciting new business, collecting the debit and keeping accurate bookkeeping records, and making monthly reports to the company.
Following her accident the plaintiff was able to perform some, but not all of her job duties. What she was unable to perform, her retired husband, August Allen, performed on her behalf. Although the plaintiff was not performing all of her duties she continued to be compensated by “Security” on a monthly basis. The trial court ruled that she was entitled to an award for loss of income as the services provided by her husband were considered a collateral source of income.
The issue before this Court is whether the trial court erred in considering the services provided by the plaintiff’s husband a collateral source of income from which the defendants were not entitled to credit. We agree with the findings of the trial court and affirm.
In Henderson v. Travelers Indemnity Company, 158 So.2d 365 (La.App.2d Cir. 1963) the plaintiff sought damages for wages lost while he was incapacitated. The appeals court denied his request noting that during his period of incapacity he was paid. The court noted that his work was performed by hired help and with the assistance of his family and specifically denied his damages request because he could not prove what he paid to have work done for him.
This case appears to support the appellant’s claim that the community has suffered no loss since the plaintiff was paid and that the work performed by her husband was not a collateral source.
In Borde v. Travelers Ins. Com., 281 So.2d 797 (La.App. 3rd Cir. 1973), in a claim by a husband for the loss of a wife’s earnings the Court stated:
“the pertinent issue was the husband’s claim for the loss of his wife’s earnings as theatre manager. The evidence showed that prior to her accident she had been employed as the manager and following the accident nothing was awarded for her loss of $75 per week for 13 weeks. She received half of her pay as sick pay for nine weeks, and additionally her husband was substituted as manager and received the full pay until his wife returned to work. During the three months she was off the job she continued to do the book work. Plaintiffs argued that defendants *1375 were not entitled to the credit for the fact that Mrs. Borde’s husband took over his wife’s work as manager, but the case turned on the fact that both Mr. and Mrs. Borde were performing the work as manager, both before the accident and during her three month period of disability, and plaintiffs were not entitled to an increase in the award.”
This case too would appear to support the appellant, however, the thrust of the case centers around the fact that the husband and wife had worked as managers before and after her accident. This fact was recognized by this court in Folse v. Fakouri, 361 So.2d 887 (La.App. 4th Cir. 1978) and the court declined to follow Borde.
In Folse, supra, the plaintiff was an owner-operator of a school bus. He was permanently disabled as a result of an accident. He employed others to drive his bus after his accident and shortly thereafter his wife began to operate the bus. The court reasoned that since the plaintiff could no longer drive the bus he was entitled to compensation for the salary he would pay others, including his wife.[1]
The reason most often stated for the existence of the collateral source rule is that the defendant should not recover from outside benefits provided to the plaintiff or procured by the plaintiff.
In Spizer v. Dixie Brewing Co., 210 So.2d 528 (La.App. 4th Cir. 1968), a doctor’s services were provided as a professional courtesy with no intention of receiving payment. This court held that whether or not the services were rendered as a professional courtesy was immaterial. Even if the services would have cost the plaintiff nothing the defendants could not profit from this benefit.
Our review of the record shows that the significant part of Mrs. Allen’s duties required her to visit all of her accounts monthly, collect the premiums from them and re-visit those accounts which were delinquent. Her salary was based upon a percentage of the collections made, as well as a bonus if the “collection credits” were good. In January, 1980, Mr. Allen who was not employed began handling these collections from his wife who because of the pain from the accident could not make them. He continued to make these collections through October, 1980 working on an average of 12 days per month making up to 84 calls on some days. Without his help, the collections would not have been made, or Mrs. Allen would have had to hire someone to do this work, as her income depended upon the collection. The trial court in his reasons for judgment observed “the Court was quite favorably impressed with the middle-aged couple who enjoy a good relationship with the insurance companies debits they worked successfully for 20 years; with their desire to remain productive wage-earners, etc.”
The defendant-appellant argues that the work performed by the plaintiff’s husband was merely the fulfillment of his obligation to support his wife as stated in Article 119 of the La. Civil Code. In support of this argument they cite James v. State, 154 So.2d 497 (La.App. 4th Cir. 1963). In that case this court held that nursing services rendered by a wife to her paraplegic husband were part of her obligation of assistance to her husband pursuant to Article 119 and therefore no recovery could be had by the plaintiff for such services. The court cited Planoil, Vol. I, Pt. I, 917, p. 525, wherein he proclaimed that the duty of assistance “enhances the personal care to be given an ill or infirm spouse.”
However, in the present suit the services provided by the plaintiff’s husband were not in the form of personal care to an infirm spouse. In addition to this distinguishing characteristic between James, supra and the present suit this same court seemed to partially erode this principle when it held that when one spouse becomes incapacitated and the other terminates employment to care for that spouse, the tort feasor will be liable for the lost wages *1376 caused by the employment termination. Berry v. Gulf Coast Const. Co., 229 So.2d 368, 372 (La.App. 4th Cir. 1969).
These cases were discussed in the decision of Wright v. United States, 507 F.Supp. 147 (1981). There the plaintiff, a paraplegic, sought compensation for the nursing services of his wife. The court examined the Louisiana cases relating to future nursing care and held that the plaintiff was entitled to an award for this care. The defendant argued that such care was the obligation of his spouse under LSA C.C. Article 119 (as is the argument here) but the court rejected this argument. The following language in Wright, supra, at page 162, sums up the court’s reasoning:
“Although mention was made of plaintiff’s wife several times in the court’s opinion, the court accepted the fact that plaintiff-husband was receiving professional nursing care at the time of trial and that he would need it in the future without commenting on any duty to care which his wife might owe him. There was no attempt to tie the wife to a husband who the court described as “a brain damaged, bed-ridden invalid” who would be “an invalid for the rest of his life.” To hold otherwise, as the defendant would have it, would in effect put the tort-feasor in the position of a third-party beneficiary of the duty of spouses to care for each other imposed by Louisiana law to the detriment of the innocent spouse. There is no indication in this later case that this is the present posture of Louisiana law. Moreover, it should be emphasized that this award is not to compensate a wife for future nursing services she will perform. It is to provide an injured person with the money he will have to expend to hire someone to do the things for him which he would have been able to do for himself or which would not have to be done at all but for the negligence of the party responsible for his injury.”
It is clear to this court, that the trial court considered the collections necessary to keep the “good relationship with the insurance companies whose debits they worked successfully for 20 years”. His findings that the husband’s services were a collateral source of income from which the defendants were not entitled to credit are correct.
Accordingly, the judgment of the trial court is affirmed, costs to be borne by defendant-appellant, Casualty Reciprocal Exchange.
AFFIRMED.

. In 1979 the Supreme Court reversed the Appeals Court, but it did so only to increase the amount of the award. 371 So.2d 1120 (La. 1979).