163 So.2d 583 (1964)
Wilma Fern Carter BRELAND, individually and as administratrix of the Estate of her minor son, William Gary Breland, Plaintiff-Appellant,
v.
The AMERICAN INSURANCE COMPANY, Defendant-Appellee.
No. 10147.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1964.
Rehearing Denied April 30, 1964.
Writ Refused June 8, 1964.
Jones, Blackwell, Chambliss & Hobbs, West Monroe, for appellant.
Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
By this action plaintiff seeks, in her capacity as administratrix of the estate of her minor son, William Gary Breland, to recover damages for personal injuries sustained by him and, in her individual capacity, to recover hospital and medical expenses incurred for the treatment of her son's injuries, and for property damage to her automobile arising out of a motor vehicle collision of August 29, 1962, occurring at the intersection of the Winnsboro *584 Road and South Ninth Street in the City of Monroe.
Involved were plaintiff's Ford, operated at the time by plaintiff's aforesaid minor son, and an automobile of one Richard Linderman, who was driving the same at the time of the accident. Made defendant is the public liability insurer of the Linderman vehicle.
Both vehicles were proceeding easterly on the Winnsboro Road about 5:30 a. m., with the Breland car in the lead. The accident occurred as Breland began a left-turn movement into South Ninth Street and as Linderman attempted a passing movement to his left. The trial court concluded that both drivers were guilty of negligence, Linderman of negligence constituting a proximate cause of the accident and Breland of contributory negligence.
From a judgment rejecting plaintiff's demands, she has appealed. The defendant has not answered plaintiff's appeal; hence the question of Linderman's negligence is a matter foreclosed and no longer before the court. The sole issue, therefore, concerns the question of Breland's contributory negligence, an issue largely factual in character.
Breland, accompanied by his 12-year-old brother, was driving easterly on the Winns-boro Road at a speed of 25-30 m. p. h., with the intention of making a left turn into South Ninth Street. Immediately on crossing South Eighth Street, Breland looked to his rear and saw the Linderman car approaching at a distance of one-and-a-half to two blocks. At that time, he turned his left-turn signal indicator on. Before reaching the Ninth Street intersection, Breland again made observation to his rear. He then observed the Linderman car at a distance of one-half to three-fourths block behind. Momentarily thereafter, as he approached the intersection, Breland began a slow left turn and, at the same time, took another look and saw Linderman 50-60 feet to the rear beginning a passing movement. Although Breland's car had only partially crossed the center line of the street, he turned his car back to the right, but was nevertheless struck from the rear. The right fender of the Linderman car struck the left side and fender of the Breland Ford. From the force of the impact of the collision, considerable damage was done to the body of the Breland Fordthe gasoline tank, transmission, and driveshaft.
No contention is made that Breland was driving at a speed other than very moderate. Nor can there be any dispute that he timely indicated his intention to make a left turn, as required by LSA-R.S. 32:104(B). Travis Ellard, Linderman's companion, testified that, while he was not paying particular attention, he saw that Breland's left-turn signal was on and operating when Linderman began his passing movement, when Linderman was 50-60 feet to the rear. Linderman, however, made no observation of the signal.
The conclusion is inescapable that Breland, from the observations aforesaid, exercised due and reasonable precautions, that is, his observations and actions were those of a reasonably prudent operator. The law requires no more under the circumstances than that the motorist determine that the left-turn movement can be made with reasonable safety. LSA-R.S. 32:104.
This court, in Faulkner et ux. v. Ryder Tank Lines, Inc., et al., La.App., 2d Cir., 1961, 135 So.2d 494 (writs denied), emphasized the fact that the general rule that a left turn is not to be undertaken until a driver ascertains it can be made in safety is subject to the exception that a motorist has the unquestioned right to assume the following traffic will observe all the duties imposed upon it by law and common sense, such as that the following traffic is proceeding within the speed limit and will not pass at an intersection where passing is prohibited; and, moreover, that the drivers of such vehicles are keeping a proper lookout. In this connection, in the *585 cited case, we made the following observation:
"In judging whether a left turn can be made in safety, a motorist has the unquestioned right to assume that the following traffic will observe all of the duties imposed upon it by law and common sense, such as that the following traffic is proceeding within the speed limit, will not pass at an intersection, and will not pass over a double yellow line, and is, moreover, keeping a proper lookout. Green v. Plummer, La.App. 1st Cir., 1960, 119 So.2d 862; Newman v. Southern Farm Bureau Casualty Ins. Co., La.App. 1st Cir., 1959, 110 So.2d 816; Kelly v. Neff, La.App. 2d Cir., 1943, 14 So.2d 657; White v. Neff, La.App.2d Cir., 1942, 11 So.2d 289.
"It is also well recognized that a motorist who desires to make a left turn on a city street is not required by law to wait until there is no traffic in sight before attempting to do so. He has the unquestioned right to move after he has made a close and careful survey of traffic conditions about him and honestly believes, from such survey, that conditions warrant such action; he is entitled to rely upon the presumption that the other motorists in sight are observing and will continue to observe the speed regulations.
* * * * * *
"As to the questions herein presented, it was very appropriately observed in Paggett v. Travelers Indemnity Company, La.App. 2d Cir., 1957, 99 So.2d 173, 176:
"The general principle, as enunciated and emphasized in the cases cited, that a left-hand turn is a most dangerous operation and is not to be undertaken until a driver ascertains that it can be performed in safety, is now so well established and so firmly imbedded in our jurisprudence as to admit neither question nor argument. But it must be borne in mind that every general rule is subject either to exception or to modification in the light of the facts of a particular case. We very much fear that our courts may have been guilty of some overemphasis in the establishment and reiteration of this rule, which has resulted in the assumption that the driver of a vehicle who undertakes a left-hand turn is guilty of negligence, per se, in the event an accident occurs. Certainly, this result was never intended. Under the facts which we consider to have been well established in the instant case, if it should be held that the driver of the Smedley car was guilty of negligence, it would be difficult to imagine an instance in which a left-hand turn could be made without an imputation of negligence. * * *'
* * * * * *
"A motorist proceeding strictly in compliance with law, as we have heretofore pointed out, has a right to assume that other motorists will likewise observe the law, and such motorist can indulge in this assumption until he sees, or should see, that the other motorists have not observed, or are not going to observe, the law. Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849.
"* * * in Kientz v. Charles Dennery [Inc.], 209 La. 144, 24 So.2d 292, 295, the Supreme Court quoted, with approval, an observation made in a dissenting opinion in the Court of Appeal by Judge (now Associate Justice) McCaleb who stated (17 So.2d 506, 513-514):
"`We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these *586 circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred.'
"See, also, Youngblood v. Robison, 239 La. 338, 118 So.2d 431." (Emphasis supplied.)
It cannot therefore be said, under the facts of this case, where Breland was operating his motor vehicle in obedience to positive law, that he was guilty of any dereliction of duty of a substantial nature and of such a direct factor that, without it, the accident would not have occurred. In fact, Linderman testified that, in discussing the accident with plaintiff immediately following the accident, he told plaintiff the accident was due to his, Linderman's, fault. The evidence fails, by any degree of preponderance, to establish that Breland was guilty of contributory negligence. The defendant must, therefore, respond to plaintiff in damages.
No question arises as to the extent of the special damages sustained by Mrs. Breland for medical expenses and for damages to her car. Dr. Alfons R. Altenberg's charges were $105.00; the St. Francis Hospital's, $124.35; the damage to the automobile, $267.47aggregating a total of $496.82.
The only question presented as to quantum relates to the award for the personal injuries, pain and suffering of the minor, William Gary Breland. The record discloses that Breland sustained a whiplash-type injury to his cervical spine, the extent of which could not be said to exceed a moderate degree. Breland was seen by Dr. Ernest Hartmann, an orthopedist, on August 31, 1962, on which occasion Breland complained of pain in his neck and right arm. Subjective symptoms of the injuries were noted by Dr. Hartmann. Breland was again seen by Dr. Hartmann on September 7, 1962, at which time symptoms of injury persisted. Another examination was made by the doctor on September 10, 1962, at which time Breland was hospitalized and placed in traction for a period of four days. A further observation was made under date of September 20, 1962, when Breland continued to suffer with intermittent headaches, and another on October 4, 1962, when the patient continued to complain of headaches, although less severe. Muscle spasm was noted in the area of the cervical spine throughout the a period of at least six weeks. Breland nevertheless continued to complain of headaches, even to the date of trial in June, 1963. Dr. Hartmann was of the opinion it was reasonable to conclude that these headaches would persist for an indefinite period of time, and that such headaches were caused by the trauma of the accident of August 29, 1962.
On the question of quantum, plaintiff cites the cases of Hickman v. Bawcom, La.App., 3d Cir., 1963, 149 So.2d 178; Cassreino v. Brown, La.App., 4th Cir., 1962, 144 So.2d 608.
Awards for whiplash injuries producing moderate or slight pain, which are cured without residual in a matter of weeks were made in the following cases: Doyle v. McMahon, La.App., 4th Cir., 1962, 136 So.2d 89 ($2,000.00); Townsend v. Maniscalco et al., La.App., 2d Cir., 1961, 128 So.2d 906 ($1,500.00); Elder v. Travelers Indemnity Co., La.App., 1st Cir., 1960, 125 So.2d 694 ($750.00); Degeyter v. Trahan et al., La.App., 1st Cir., 1959, 113 So.2d 808 ($1,150.00). These cases involved *587 minor or moderate pain; complete recovery followed within two months.
In the event of a recovery, the defendant suggested that an award of $1,150.00, as made in Degeyter v. Trahan et al. case, supra, would be adequate. In giving consideration to all the facts and circumstances, we conclude that an award of $2,000.00 is neither inadequate nor excessive.
Accordingly, for the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed there be judgment herein in favor of the plaintiff, Mrs. Wilma Fern Carter Breland, in her individual capacity, for the full sum of $496.82, and, in her capacity as administratrix of the estate of her minor son, William Gary Breland, for the sum of $2,000.00, against the defendant, The American Insurance Company, with 5% per annum interest on both of said sums from judicial demand until paid, and for all costs, including the cost of this appeal.
Reversed and rendered.
PER CURIAM.
On presentation of a motion for rehearing, our attention has been called to the fact that although this action was instituted by plaintiff in her individual capacity, as well as administratrix of the estate of her minor son, William Gary Breland, by supplemental proceedings, it was prosecuted to judgment by plaintiff in her individual capacity and as natural tutrix of the aforesaid minor. Our decree should be amended to reflect said change.
Therefore, the judgment and decree of this court are amended so as to show the award made in the minor's behalf to be in favor of plaintiff as the minor's natural tutrix.
With this amendment, the motion for a rehearing is denied.