266 So.2d 240 (1972)
MOTORS INSURANCE CORPORATION
v.
Jackson P. HOWELL.
No. 11883.
Court of Appeal of Louisiana, Second Circuit.
June 27, 1972.
*242 Theus, Grisham, Davis & Leigh, by R. L. Davis, Jr. and J. Bachman Lee, Monroe, for Alcus J. Gibson and Employers Fire Insurance Company, appellants.
Hamilton & Carroll, by O. N. Hamilton, Jr., Oak Grove, for Jackson P. Howell and Ebbie C. Howell, appellees.
Before BOLIN, HEARD and HALL, JJ.
HALL, Judge.
This tort suit arises out of a collision between a left-turning automobile and an overtaking and passing pickup truck. The district court held that the accident was caused by the negligence of Alcus J. Gibson, driver of the overtaking pickup truck, and that Jackson P. Howell, driver of the left-turning automobile, was free from negligence. A judgment for damages was rendered in favor of Howell and his wife, who was a passenger in the automobile, against Gibson and his liability insurer, Employers Fire Insurance Company. Gibson and his insurer appealed. We affirm the judgment of the district court.
This suit was originally instituted by Motors Insurance Corporation, collision insurer of the Gibson vehicle, against Howell, seeking recovery of the sum of $583.41 for damages to the pickup truck, being the full amount of damages to the truck including the insured's $100 deductible. The petition alleged that under the subrogation agreement executed by Gibson, the plaintiff was authorized to proceed in its own name alone for the full amount of the damages.
The original defendant, Howell, answered denying negligence and liability and by way of reconventional demand, joined in by his wife as intervenor, sought recovery against Gibson and his liability insurer for personal injuries, medical expenses and property damage allegedly incurred by them arising out of the accident.
Gibson and Employers filed a peremptory exception of no cause or right of action to the Howells' reconventional demand on the basis that a reconventional demand may only be asserted against the plaintiff in the principal action and that neither Gibson nor his liability insurer were parties plaintiff in the principal action. Reserving their rights under the peremptory exception, Gibson and Employers answered denying negligence on the part of Gibson and alternatively pleading Howell's contributory negligence.
On June 30, 1966, the peremptory exception filed by Gibson and Employers was overruled and the case went to trial on the merits before Judge J. Vernon Sims. Trial was completed and the case was submitted for decision with briefs to be filed by each party within delays fixed by the court. Briefs were subsequently filed but the case was not decided prior to the retirement of Judge Sims. On October 18, 1971, Judge B. I. Berry rendered written reasons for judgment, awarding Mrs. Howell $750 for her pain and suffering, awarding Mr. Howell $7,500 for his pain, suffering and disability, and awarding Mr. Howell a total of $1,563.58 for medical expenses and damages to his automobile. Judgment was signed accordingly, with Employers' liability being limited to $5,375 under its policy limits and Gibson being cast for $3,688.58 over and above the policy limits. The original demand of Motors *243 Insurance Corporation was rejected. Motors Insurance Corporation was not represented at and did not participate in the trial and its original demand is not before this court on appeal.
After judgment was signed, Gibson and Employers filed a motion for rehearing and/or new trial and also filed a motion to dismiss the suit for failure to prosecute for more than five years pursuant to the provisions of LSA-Code of Civil Procedure Article 561. Both motions were overruled by the district court and this appeal ensued.
The issues presented on appeal are:
(1) Whether the peremptory exception directed at the Howells' reconventional demand and/or intervention should have been sustained.
(2) Whether the Howells' actions should have been dismissed for failure to prosecute.
(3) Whether Gibson was negligent.
(4) Whether Howell was contributorily negligent.
(5) Whether the amount of damages awarded to Howell was excessive.

THE PEREMPTORY EXCEPTION OF NO CAUSE OR RIGHT OF ACTION
In support of their peremptory exception of no cause or right of action, Gibson and Employers urge that the Howells could not bring reconventional demands against them because Gibson and Employers were not plaintiffs in the principal action. LSA-Code of Civil Procedure Article 1061 provides:
"The defendant in the principal action may assert in a reconventional demand any action which he may have against the plaintiff in the principal action...". (Emphasis supplied)
On the other hand, appellees argue that Gibson was, in truth and in fact, a real party at interest appearing through a nominal plaintiff and, therefore, the reconventional demand could properly be asserted against Gibson and his liability insurer.
The suit was originally brought by Motors Insurance Corporation for the full amount of damage to the Gibson vehicle. The petition alleges and the evidence shows that Motors Insurance Corporation under its collision insurance policy paid for the damages to the vehicle, less the $100 deductible. Gibson executed a subrogation agreement in favor of Motors Insurance Corporation containing standard subrogation language and authorizing and empowering the insurer "to sue, compromise or settle in the undersigned's name or otherwise". Under this provision, Motors Insurance Corporation was authorized to bring suit for the full amount of damages either in its own name or in the name of Gibson, or both. Gibson was the real party at interest and Motors Insurance Corporation was only a nominal plaintiff to the extent of $100 of the amount sued for. Johnson v. Wilson, 97 So.2d 674 (La.App. 1st Cir. 1957) is closely in point and involved a reconventional demand against the liability insurer of a plaintiff subrogor who brought the original suit in his own name, individually and for the use and benefit of his collision insurer. The court held:
". . . Appellants urge that the insurer, not a party to the suit, could not be made so by reconventional demand, citing Lyons v. Fry, 112 La. 759, 36 So. 674.
However, while this may be so as to a genuine third party, it is well settled that a reconventional demand may be asserted in the same proceedings against a real party in interest appearing through a nominal plaintiff. Smith v. Atlas Steam Cordage Co., 41 La.Ann. 1, 5 So. 413; Dugas v. Lewis-Chambers Const. Co., La.App. Orleans, 187 So. 117; 80 C.J.S. Set-Off and Counterclaim § 49, p. 80 ...".
*244 The reconventional demand here could properly be brought against Gibson as he was a real party in interest and Motors Insurance Corporation was only a nominal plaintiff to the extent of Gibson's interest. The relative position of Gibson and Motors Insurance Corporation, to the extent of Gibson's interest for which he had expressly authorized Motors Insurance Corporation to sue, in its own name, was that of principal and agent. Carl Heck Engineers, Inc. v. Daigle, 219 So.2d 294 (La.App. 1st Cir. 1969). Under LSA-Code of Civil Procedure Article 694 the principal is considered the plaintiff in an action brought by an agent to enforce a right of his principal. This Article specifically provides:
"* * *
". . . The defendant may assert any defense available against the principal, and may enforce his rights against the principal in a reconventional demand."
Appellants further argue that Gibson cannot be considered as a real party at interest because it was necessary for him to join in the suit to assert his interest under LSA-Code of Civil Procedure Article 697, which requires that where there is a partial subrogation of an incorporeal right, the right must be enforced judicially by both the subrogor and the subrogee. This Article has no bearing on the issue presented. In the Carl Heck Engineers, Inc. case, the court held that this Article does not prohibit a subrogee from authorizing the subrogor or someone else to judicially enforce its subrogation rights. The same reasoning would apply to an authorization by a subrogor.

MOTION TO DISMISS FOR FAILURE TO PROSECUTE
LSA-Code of Civil Procedure Article 561 provides that an action is abandoned when the parties fail to take any steps in its prosecution or defense in the trial court for a period of five years. The provision is operative without formal order. This case was tried June 30, 1966, and was not decided until October 18, 1971, a period of more than five years. Appellants urge that the suit should be dismissed as abandoned.
It is clear from the record that briefs were filed by both sides of the case after the case was tried and that the suit was submitted for decision well within the five year period after trial. It is settled law that once a case is submitted to a court for decision, Article 561 is inapplicable to either party thereto, since the delay is attributable to the court. Burke v. State Farm Mutual Automobile Ins. Co., 234 So. 2d 432 (La.App. 1st Cir.1970); Washington v. Harvey, 124 So.2d 240 (La.App.2d Cir. 1960). The motion to dismiss was correctly overruled.

GIBSON'S NEGLIGENCE AND HOWELL'S CONTRIBUTORY NEGLIGENCE
Appellants urge that the district court erred in finding that Gibson was negligent and that Howell was free from negligence.
The accident occurred on April 13, 1964, approximately 1.5 miles north of the city limits of Wisner, Louisiana, on U. S. Highway 15 which runs generally in a north-south direction. Howell, accompanied by his wife, was operating his 1956 Ford northerly on Highway 15 with the intention of making a left turn into a gravel road which forms a T-intersection with Highway 15. Following the Howell automobile was a large van-type truck owned by F. Strauss & Sons, Inc. and operated by Anderson Cheffin. Gibson was driving a 1962 Chevrolet pickup truck and was also traveling north on Highway 15 behind the Strauss truck. The accident occurred at a time when Gibson was passing and Howell was turning left into the gravel road which intersects the highway from the west.
Howell testified he turned on his left turn blinker signal about one hundred *245 yards from the gravel road into which he intended to turn left. He gradually decreased his speed until he was almost stopped at the time he actually commenced the left turn. He observed in his rear view mirror the large Strauss truck following him and saw the truck slow its speed in response to his signal. There was no oncoming traffic so Howell was able to look several times in his rear view mirror, the last time being as he actually commenced his turn. He testified that he never saw the Gibson pickup truck in his rear view mirror and saw the pickup truck for the first time after he had almost completed his turn into the gravel road immediately prior to the moment of impact. The right front of the Gibson pickup truck struck the left side of the Howell automobile at about the center. The point of impact was in the westerly lane of Highway 15. Howell's automobile was at least partially into the gravel road as both he and his wife so testified and in light of Gibson's testimony that his left front wheel was off the west side of the road at the point of impact.
The testimony of Cheffin, the Strauss truck driver, is substantially in accord with that of Howell. He was observing the Howell automobile preparing to turn left with its blinker light on and traveling at a decelerating rate of speed. He was also aware of the Gibson pickup truck approaching from the rear in the same northerly lane of travel. The essence of Cheffin's testimony is that Howell commenced his left turn and Gibson commenced his passing maneuver at substantially the same time.
Gibson testified he had been following the truck for some distance and upon arriving at a flat and level stretch of the road at a time there was no southbound traffic in view, he pulled into the left lane and started passing the truck approximately one hundred to one hundred fifty yards from where the accident occurred. He sounded his horn prior to going around the truck. He had been traveling at a speed of about thirty-five miles per hour and accelerated to approximately fifty miles per hour in order to pass the truck. When Gibson was about half way around the truck he then saw the Howell vehicle for the first time starting its left turn with the left front wheel coming across the center line. Gibson immediately sounded his horn and applied his brakes and tried to pull to his left but was unable to avoid the ensuing collision.
A Mrs. Barfield, who was standing at the kitchen window of her nearby home, testified her attention was directed to the scene by the application of air brakes by the truck. She stated that when she looked up she saw Mr. Howell turning and Gibson attempting to stop with the vehicles about a car length apart.
The investigating officer, Trooper Colvin, found eighty feet of skid marks left by the Gibson vehicle leading to the point of impact in the westerly lane of Highway 15.
A sharp factual dispute exists as to whether there were yellow "no passing" lines at the scene of the accident. Howell's brother, Jesse Howell who lives down the gravel road, and Cheffin testified that there were yellow lines. Trooper Colvin and the town marshal of Wisner, Mr. Brown, who also went to the scene of the accident, testified positively there were no yellow lines at the time of the accident. Both testified that approximately one week after the accident the Department of Highways painted yellow lines in this area.
The evidence is clear that there were no signs on Highway 15 indicating an intersection with another public road. The evidence is in conflict as to whether there was a stop sign on the gravel road leading into the highway. The gravel road, maintained by the parish, runs a mile or a mile and a quarter to the west and intersects with another gravel road. About three or four residences are located on the road. The testimony, together with photographs offered into evidence, indicates that the *246 road would be hardly noticeable to a motorist proceeding north on Highway 15 and if noticed would probably not give the impression as being a public road. The state trooper thought it was a private road until some time after the accident when he learned that it was maintained by the parish.
From the evidence we readily conclude that Gibson was negligent and his negligence was a proximate cause of the accident. If he could not see the Howell automobile because of the truck, he should have at least observed the truck reducing its speed. Under these circumstances, Gibson should have exercised particular caution in commencing his passing maneuver. After Gibson got into the left hand or passing lane, he should have been able to see the Howell automobile regardless of its position at that time with its left turn signal on and he should have been able to take steps at that moment to avoid the accident.
The most significant issue, purely factual, in this case is whether Howell was contributorily negligent. Appellants cite a long line of cases in which left-turning motorists have been held negligent under similar circumstances. Maryland Cas. Ins. Co. v. Southern Farm Bur. Cas. Co., 228 So.2d 88 (La.App.2d Cir.1969); Ulmer v. Travelers Insurance Company, 156 So.2d 98 (La.App. 1st Cir.1963); Smith v. Massachusetts Bonding And Insurance Co., 130 So.2d 153 (La.App.2d Cir. 1961). Appellees cite a long line of cases in which left-turning motorists have been held to be free of negligence in a like situation. Balthazar v. Liberty Mutual Insurance Company, 256 So.2d 643 (La.App.2d Cir. 1972); Ducote v. Allstate Insurance Company, 242 So.2d 103 (La.App. 1st Cir.1971); Nain v. State Farm Mutual Automobile Insurance Company, 241 So.2d 792 (La.App.3d Cir. 1970); Olson v. Ponthier, 225 So.2d 259 (La.App. 3d Cir.1969); Breland v. American Insurance Company, 163 So.2d 583 (La.App.2d Cir.1964); Faulkner v. Ryder Tank Lines, Inc., 135 So.2d 494 (La.App.2d Cir. 1961); Hinton v. Beyl, 122 So.2d 680 (La.App. 1st Cir. 1960); Paggett v. Travelers Indemnity Company, 99 So.2d 173 (La.App. 2d Cir. 1957); Smedley v. Travelers Indemnity Company, 99 So.2d 178 (La.App. 2d Cir. 1957). Each side attempts to distinguish the other's cases and they do so successfully because no two accidents ever present the exact identical facts. Each case must be decided on its own particular facts and each case involves a determination of whether the motorist's actions were reasonable under the particular circumstances involved.
There is no real dispute as to the law applicable to a left-turning motorist. Such a maneuver is dangerous and the left-turning motorist must exercise a high degree of care and must make certain that his turn can be made in reasonable safety. A motorist turning into a private driveway has a higher standard of care and is entitled to rely less on what can be expected of an overtaking motorist than one who is turning into a public road. In this case, regardless of whether this was an intersection within the meaning of the statutory regulations and regardless of whether there were yellow lines prohibiting passing, we conclude that Howell did everything he could reasonably have been expected to do to ascertain that the turn could be made in safety. He turned on his blinker light a sufficient distance prior to making the turn. He kept an almost constant lookout in his rear view mirror and observed the only visible, following traffic slowing down and honoring his signal. He looked to the rear again at the moment of commencing his turn. We conclude that Gibson had not actually commenced his passing maneuver to the extent he was in the passing lane at the time Howell began his left turn. This is the real key factual question to be decided. If Gibson was in the passing lane before Howell commenced his left turn then Howell should have seen him and should not have made the turn. If Gibson was not in the passing lane at the time Howell commenced his turn then *247 Howell could not have seen him and his action in making the turn was reasonable. The testimony of the witnesses and the physical evidence including skid marks, point of impact and area of damage to the vehicles, taken as a whole, weigh in favor of this latter conclusion.
We conclude as did the district court that Gibson was negligent and Howell was free from negligence.

AMOUNT OF DAMAGES
Appellants contend that the award of $7,500 to Howell for his pain, suffering and disability is excessive and amounts to an abuse of the district court's much discretion.
After the accident, Howell was taken by ambulance to King's Sanitarium in Winnsboro where he was examined by Dr. Charles R. Walls, a general practitioner. His main symptoms were pain in the chest and stomach region, shortness of breath and syanosis of the skin, lips and fingernails. After a sharp drop in blood pressure, Dr. Walls suspected internal injuries and that night Howell was transferred to Monroe for examination and treatment by Dr. Daniel W. Sartor, a surgeon. Dr. Sartor performed an exploratory operation of the abdomen which revealed no internal injuries. Howell remained in the hospital for about four days and was released on April 18, 1964, to the care of his family doctor, Dr. Jack B. Golson of Oak Grove. A convalescent period of about three months was predicted by Dr. Sartor at that time.
In the late summer of 1964, Howell developed an incisional hernia and was hospitalized by Dr. Sartor on October 24, for possible surgery to correct the hernia. He remained in the hospital about two weeks. Because of complaints of chest pains, Dr. Sartor called in a heart specialist, Dr. Troy E. Redman, for consultation. Dr. Redman diagnosed Howell's heart condition as coronary arteries insufficiency with active angina pectoris. He also found that Howell suffered from broncho spastic disease and early emphysema. Because of the heart condition it was elected not to repair the hernia and Howell continues to experience some pain and disability by reason of this condition.
A farmer all his life, Howell, who was sixty-three years of age at the time of the accident, farmed a forty-acre tract owned by him and some additional land which he rented, doing most of the work himself. Because of his disability due to the incisional hernia combined with his heart condition, he is now unable to do the work himself and has been required to hire the required labor. While the heart condition, which was not caused by the accident, might in itself be disabling to some degree, the incisional hernia resulting from his treatment due to the accident is a substantial contributing factor to his permanent disability. Howell suffered considerable pain and discomfort for several months after the accident and continues to experience some degree of pain and discomfort due to the hernia. The award of $7,500 for his pain, suffering and disability is within reasonable limits and does not constitute an abuse of the district court's much discretion.
For the reasons assigned, the judgment of the district court is affirmed at appellants' costs.
Affirmed.