372 So.2d 811 (1979)
NATCHITOCHES MOTOR COMPANY, LTD., Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellants.
No. 7052.
Court of Appeal of Louisiana, Third Circuit.
June 20, 1979.
*812 Watson, Murchison, Crews, Arthur & Cockern by William P. Crews, Jr., Natchitoches, for defendants-appellants.
Whitehead & McCoy, Charles R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Before WATSON, FORET and CUTRER, JJ.
CUTRER, Judge.
This is a tort action instituted by the Natchitoches Motor Company, Ltd. seeking to recover $1,690.39 in property damages to plaintiff's 1977 Ford LTD. The damage resulted from a collision which occurred between plaintiff's vehicle, driven by Charles R. Whitehead III, and a Louisiana State Police car driven by State Police Trooper, Sammie L. Kitchen. Named as defendants in this suit were Trooper Kitchen and Travelers Insurance Company, the liability insurer for the Louisiana Department of Public Safety. The amount of the property damages was stipulated. From a judgment awarding recovery to the plaintiff, defendants appeal. We affirm.
The sole issue on appeal is whether Charles Whitehead III, the operator of plaintiff's vehicle, was contributorily negligent.
The collision in question occurred on June 3, 1978 at approximately 5:20 P.M. The vehicle driven by Charles Whitehead was proceeding in the eastbound lane of Texas Street immediately to the east of the intersection of Texas Street and Dorothy Street in the City of Natchitoches, Louisiana. At this location, Texas Street is a two-lane, hard surfaced highway generally congested with heavy traffic. Throughout this area, Texas Street is clearly marked with a double yellow centerline indicating a "No Passing" zone. The speed limit is posted at 35 miles per hour.
As Whitehead proceeded along Texas Street, he decided to make a left turn into the parking lot of a restaurant. At this point, Whitehead was followed by two vehicles. A pickup truck was traveling immediately behind Whitehead's vehicle and Trooper Kitchen's vehicle was approaching the pickup. Trooper Kitchen was in the process of responding to an emergency call and had both his visual and audible warnings activated.
*813 Trooper Kitchen testified that he was traveling along Texas Street at 35 to 45 miles per hour. He came up behind the pickup truck and the Whitehead vehicle about one block west of the intersection of Texas Street and Dorothy Street. After crossing this intersection, Kitchen decided to pass both vehicles as neither of them showed signs of pulling to their right to allow him to pass. According to Kitchen's testimony, as he pulled left, the pickup truck began to pull right toward the shoulder of the road and Whitehead began turning left. When Kitchen saw Whitehead in the left lane, he applied his brakes and skidded 63 feet before colliding with the left rear corner of plaintiff's vehicle. Kitchen stated that he never observed any turn signal on plaintiff's car, but it should be noted that there was a pickup truck between him and plaintiff's car as he began his passing maneuver.
Charles Whitehead testified that between three and four car lengths ahead of his anticipated turn, he activated his left turn signal. According to Whitehead, as he slowed, he looked into his inside rearview mirror and saw only the pickup truck behind him. He saw no oncoming traffic on the left (westbound) lane. Whitehead came to a stop and then began his turn. As to whether he looked in his rearview mirror while in the stopped position, Whitehead stated: "I was looking in the rearview mirror all of the time I was stopped. When I was stopped it wasn't like I was driving and I stopped and looked up. I was looking in the rearview mirror most of the time." Whitehead proceeded to turn left and had almost cleared the left lane when the impact occurred.
Whitehead stated that he had not heard Kitchen's siren nor seen the trooper's flashing red lights until a moment before the impact. The windows of Whitehead's vehicle were up and the air conditioning was turned on. The only traffic he saw before the accident was the pickup truck immediately behind him. Whitehead stated that he did not use the side rearview mirror as it was broken at the time.
The trial court, in a written opinion, found that the driver of plaintiff's vehicle did not see or hear Kitchen until immediately before impact; that the plaintiff's vehicle had practically cleared the left lane when Kitchen collided with the left rear corner of plaintiff's car; and that the sole proximate cause of the accident was the fault of Trooper Kitchen. The court found that Kitchen was negligent "in attempting to pass two vehicles in a `no passing' zone, congested with heavy traffic, when he could not tell what the lead vehicle (plaintiff's car) was going to do."
Defendant's argument that Whitehead was contributorily negligent is based on (1) a violation by Whitehead of his duty as a left-turning motorist to make proper observation that the turn can be made without endangering oncoming or overtaking vehicles, (2) Whitehead's failure to respond properly to the trooper's warning lights and siren, and (3) the failure by plaintiff to have a properly maintained side rearview mirror.
It is well settled that a left-turn movement is generally characterized as a dangerous operation, not to be undertaken until the motorist ascertains that it can be made in safety. LSA-R.S. 32:104. This principle is so well established that citation of authorities would be superfluous.
There is no presumption, however, that the driver of a left turning vehicle is guilty of negligence. Both a left turning and a passing motorist are charged with an exceptional duty of care. Whether there has been a breach of duty on the part of either must be proved. In the instant case, Trooper Kitchen's negligence was clearly proved by plaintiff and is not at issue. The defendants bear the burden of proving Whitehead's contributory negligence.
In judging whether a left turn can be made in safety, the motorist has the right to assume that a following motorist will observe all the duties imposed upon him by law and common sense. Thus, he may assume that the following motorist will proceed within the speed limit and will not *814 cross over a yellow line in his traffic lane marking a "no passing" zone and, moreover, will keep a proper lookout. Breland v. American Insurance Company, 163 So.2d 583 (La.App. 2nd Cir. 1964), writs refused 246 La. 379, 164 So.2d 362 (1964).
In executing the left turn, Whitehead complied with the requirements of the law. He made close observation of oncoming traffic, noting a lack of same; checked the location and speed of the only vehicle seen following him; gave a proper left turn signal and ascertained that such signal was being heeded by the driver of the pickup truck, the only vehicle in view to his rear. It is only then that Whitehead began to carefully negotiate the left turn into the parking lot of the eating establishment.
It is argued that Whitehead's failure to respond to the emergency vehicle signals constitutes negligence. The trial court held that Whitehead did not see or hear the police unit until immediately before the impact. Whitehead testified that his windows were up and the air conditioning was turned on. The trial judge accepted this explanation and the record fully supports such conclusion of fact. The duty of a motorist to yield the right of way to emergency vehicles under LSA-R.S. 32:125[1] only arises when the motorist observes or hears, or under the circumstances should have observed or heard, the audible and/or visual warnings of the emergency vehicle. To bar plaintiff's recovery, defendants must establish that Whitehead was aware or should have been aware of Trooper Kitchen's approach. The defendants have failed in this burden of proof.
The record strongly indicates that when Trooper Kitchen suddenly pulled out to pass the pickup truck and the Whitehead vehicle, that Whitehead had begun to execute his left turn. Randall Chambers, a witness called by defendants, testified that, simultaneously with Trooper Kitchen pulling into the left lane, he saw smoke coming from the tires of Kitchen's vehicle. Also, the location of the skid marks and the damaged portion of each vehicle reflects that the front part of the Whitehead vehicle had cleared the highway at the time the police unit struck the left rear corner of the Whitehead vehicle. In view of this evidence, we conclude that when Whitehead began his left turn, Trooper Kitchen's vehicle was not in such a physical location that it could have been seen by Whitehead either through his inside mirror or the outside rearview mirror even had it been operable.
Under the facts established in the record and as found by the trial court, with which we are in accord, we find no basis for disagreement with the trial court's conclusion that the plaintiff's driver was free from negligence and that the negligence of Trooper Kitchen constituted the sole, proximate cause of the accident.
For these reasons the judgment of the trial court is affirmed at defendants-appellants' costs.
AFFIRMED.
NOTES
[1] LSA-R.S. 32:125 states that:

"Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer."