387 So.2d 613 (1980)
Chester G. BOND, III et ux., Plaintiffs-Appellants,
v.
Cindy G. JACK et al., Defendants-Appellees.
No. 7489.
Court of Appeal of Louisiana, Third Circuit.
June 3, 1980.
Rehearing Denied July 31, 1980.
*614 Bolen & Erwin, Gregory S. Erwin, Alexandria, for plaintiffs-appellants.
McBride & Brewster, Norman P. Foret, Lafayette, Gist, Methvin, Hughes & Munsterman, Dorwan G. Vizzier, Alexandria, Cooks & Chreitian, Sylvia R. Cooks, Lafayette, McLure & McLure, John G. McLure, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
LABORDE, Judge.
This is one of two appeals which come to this court following the trial of the consolidated suits.
Plaintiffs[1] filed two lawsuits seeking damages for the death of their major son, Chester G. Bond, IV, and for his pain and suffering, medical expenses and property damage. The defendants herein are the driver of the vehicle, Cindy G. Jack, and her liability insurer, State Farm Mutual Automobile Insurance Company. The defendants in the companion suit are the uninsured motorist carriers for the deceased, Commercial Union Assurance Companies, and for his parents, Lumbermen's Mutual Casualty Company. A separate decision is being rendered therein, Chester G. Bond, III, et ux. v. Commercial Union Assurance Companies et al., 387 So.2d 617 (La.App. 3rd Cir. 1980).
The deceased, Chester G. Bond, IV, was riding his motorcycle in a southerly direction on a four lane avenue in the City of Lafayette. Defendant, driving her vehicle in a northerly direction, executed a left turn in front of the deceased. In his attempt to avoid the collision, the deceased lost control of his motorcycle, flipped into the air and landed on the pavement. He sustained severe head injuries which resulted in his death the following day.
From a jury verdict for defendants, plaintiffs have appealed. Appellants have made nine assignments of error. The suggested errors fall into four areas: 1) failure to give certain charges to the jury; 2) improper closing arguments; 3) improperly allowing defendants a 4½ hour recess to obtain a witness; and 4) manifest error by the jury in failing to find for plaintiffs.
Our decision today on the first and fourth specifications pretermits consideration of the other two areas. The principle that "a proper charge of all facets of the law involved is essential in order that a jury may fairly adjudicate the rights, liabilities and obligations of the parties concerned"[2] is well established in Louisiana jurisprudence. Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir. 1977), writ denied 351 So.2d 161, 162; Reeves v. Gulf States Utilities Co., 312 So.2d 118 (La.App. 1st Cir. 1975), writ granted on other grounds 320 So.2d 902, on remand 327 So.2d 671, writ denied 330 So.2d 309, 311; Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Bush v. St. Paul Fire and Marine Insurance, 264 So.2d 717 (La.App. 1st Cir. 1972), writ refused 262 La. 1180, 266 So.2d 452.
It is clear that where there is a question that factual findings are not made pursuant to a clear understanding of the applicable law, the charges will be deemed insufficient or inadequate. Bienvenu v. Angelle, 254 La. 182, 223 So.2d 140 (La. 1969); Reeves v. Gulf States Utilities Co., supra.
*615 The Supreme Court in Gonzalex v. Xerox Corporation, supra, clearly laid down the rule that where erroneous charges preclude the jury from reaching a verdict in accordance with the law and facts, the Court of Appeal should render a judgment on the record before it.
Therefore, if our examination reveals that the jury charges were either so incorrect or inadequate as to preclude the jury reaching a verdict in accordance with the law and facts, we must render a judgment on the record as if we had the case before us for a trial de novo. Higgins v. Johnson, supra. We are authorized to render any judgment which is just, legal and proper upon the record on appeal. LSA-C. C.P. Art. 2164.
Additionally, we, in our review of the record, feel that even if the jury had the proper charge, it would be manifest error to reach a verdict for defendants. Our analysis utilized the standard of review articulated in Canter v. Koehring Company, 283 So.2d 716 (La.1973) as follows:
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.
Manifest error was explained in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
"Manifestly erroneous," in its simplest terms, means "clearly wrong." We said, then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong.

The jury verdict was clearly wrong as can be seen from our review of evidence hereinafter.
The trial judge charged the jury that the standard by which defendant's actions should be judged was ordinary care. (Record, p. 379). Ordinary care was defined by him as "that care which reasonably prudent persons exercise in the management of their own affairs in order to avoid injury to themselves or their property, or the persons or property of others." (Record, p. 379). We believe that, despite his admonition that the amount of care varies in proportion to the danger, the jury was not given the correct standard of care for left turning motorists. It is clear from the jurisprudence that a left turning motorist bears a higher standard of care than ordinary. The standard has been described as a high degree of care, Motors Insurance Corp. v. Howell, 266 So.2d 240 (La.App. 2nd Cir. 1972); Casimere v. Ryder Truck Rental, Inc., 324 So.2d 855 (La.App. 4th Cir. 1975); higher duty of care, Morgan v. Lumbermen's Mutual Casualty Company, 317 So.2d 7 (La.App. 1st Cir. 1975); exceptional duty of care, Natchitoches Motor Company v. Travelers Insurance Company, 372 So.2d 811 (La.App. 3rd Cir. 1979); duty is considerable in degree, Tallo v. Johnson, 255 So.2d 446 (La.App. 1st Cir. 1971). The high degree of care has been increased where the turn is into a private drive instead of an intersection, Motors Insurance Corp. v. Howell, supra, apparently since such a maneuver is least expected there.
The turn in the instant case is from a four-lane heavily traveled avenue onto a two-lane side street. We believe that under those circumstances, the defendant driver is required to meet a high standard of care in executing the maneuver. Since the standard of care given to the jury is appreciably less than the standard we believe applies, we are holding that the jury did not return a verdict consonant with the law. As noted above, this requires us to examine the record and render a judgment.
One witness had been following the deceased for some distance. He testified that the deceased was going about the same speed as he was and that he didn't recall his exact speed but he usually drove the speed limit which he testified was 35 miles per hour. He also testified that both he and the motorcyclist were in the right-hand lane, that he estimated his distance from the intersection to be 100 feet and the motorcycle was approximately half-way between him and the intersection.
*616 The next witness called by plaintiff testified she was in an adjacent parking lot when she heard brakes or tires squeaking. She testified that the turning vehicle was approximately half-way into the side street when she looked up and saw Mr. Bond in the air near the vehicle.
The next witness was driving to the side and slightly behind the defendant's vehicle. He testified the motorcycle was in the opposite outside lane and was proceeding in a normal fashion. He did not know whether the defendant stopped before turning, but did see the motorcycle rider trying to avoid the collision.
The officer investigating the accident testified there was a skid mark in the outside lane beginning 76 feet and 9 inches north of the intersection and running 40 feet and 9 inches in length. The skid mark was entirely in one lane. He also testified he found both Mr. Bond and the motorcycle in the right-hand lane of travel with Mr. Bond lying on the road on the south edge of the intersection.
The defendant testified that she came to a stop and turned while the deceased was a block and a half away. She also was under the impression that he was in the inside lane contrary to the skid marks and plaintiff's witnesses.
One of defendant's passengers testified that the defendant came to a stop to wait for oncoming traffic to pass. She also said the motorcycle was "real far away" when she first saw it.
The other passenger also said that defendant, her sister, was stopped to wait on traffic. She first saw the motorcycle during the turn. She said the front of the car was at Azalea Street when she saw the motorcycle which was moving from side to side according to her. In her opinion, he was a good distance away from the intersection.
The final eyewitness was in an adjacent parking lot when she noticed the motorcycle. She said she noticed it due to either brakes screeching or his rate of speed. She also said that he was swerving from side to side before he went down. She also testified at trial that she saw the top of a car that was turning, but in an earlier statement had said she did not see a turning vehicle. She also testified that the motorcycle swerved across both lanes before going down.
We make the following findings of fact: 1) Defendant, Cindy G. Jack, breached her duty to Chester G. Bond, IV, in that she attempted to turn left without determining that such movement could be made with reasonable safety; 2) defendant failed to exercise the standard of care required of a left turning motorist; and 3) deceased, Chester G. Bond, IV, was not contributorily negligent in his operation of the motorcycle or his failure to wear a safety helmet.
We conclude that the decedent's oncoming motorcycle was reasonably close to the intersection to such an extent that the defendant Jack was patently negligent in turning left in front of its path. The evidence substantiates this conclusion, and we are bolstered in this regard by the observation of the trial judge, who, even though denying plaintiff's motion for a new trial, said:
"In this case I was impressed with certain evidence which indicated to me that the deceased, who was driving a motorcycle, was about 120 feet from the intersection and driving 35 miles per hour at the time the defendant driver commenced her left turn. 35 miles per hour is approximately 51 feet per second, therefore, the deceased would have been about 2½ seconds away from the intersection at the time the defendant driver started turning left. For this reason I was somewhat surprised at the jury verdict. . ." (Emphasis added).
Plaintiffs sued for both their loss of love, affection, and support and for the deceased's pain and suffering, medical expenses, and property damage. Plaintiffs-appellants in their brief have argued only for damages for pain and suffering, loss of love and affection, and medical expenses. Since we find no evidence in the record to support the other damages prayed for, plaintiffs are limited to those items.
*617 Plaintiffs suggest an award of $20,000 for decedent's pain and suffering, citing Lalonde v. Missouri Pacific Railroad Company, 366 So.2d 619 (La.App. 3rd Cir. 1978) and Temple v. Liberty Mutual Insurance Co., 336 So.2d 299 (La.App. 1st Cir. 1976). We note in Lalonde that the decedent was conscious and complained of pain. We believe that reasonable guides are Brandon v. State Dept. of Highways, 367 So.2d 137 (La.App. 2nd Cir. 1979) where decedent was unconscious or in shock, gurgled, had no motor reaction or reflexes and died the next day ($10,000) and Marceleno v. State Dept. of Highways, 367 So.2d 882 (La.App. 2nd Cir. 1978) where decedent moaned and gurgled prior to removal to hospital, moved her arms and legs, responded to light, and died 36 hours after the accident ($10,000). We therefore award $10,000 for decedent's pain and suffering.
Regarding the wrongful death claim of the deceased's parents, we realize no monetary award would be sufficient compensation. Inadequate as it is, a monetary award is the sole method of compensating plaintiffs. Based on the evidence before us, we feel an award of $20,000 per parent is appropriate.
The medical expenses were stipulated by both parties to be $8,007.58. We render judgment accordingly.
For the reasons hereinabove given, the judgment of the trial court in this suit will be reversed insofar as plaintiffs' demands were rejected and judgment will be rendered for plaintiffs and against defendants herein. Accordingly, it is ordered, adjudged, and decreed that there be judgment herein favor of plaintiffs and against defendant, Cindy G. Jack, in the full sum of Fifty-eight Thousand, Seven and 58/100 ($58,007.58) Dollars, and against State Farm Mutual Automobile Insurance Company, for the sum of Five Thousand and no/100 ($5,000.00) Dollars, the latter sum being in solido with Cindy G. Jack up to that amount on the judgment rendered herein against her. The judgments carry legal interest from date of judicial demand until paid.
It is further ordered that the judgment herein is to be consolidated with, and not added to, the judgment rendered this date in the companion suit, # 7488.
Defendants are cast for all costs at trial and on appeal.
REVERSED AND RENDERED.
NOTES
[1] The original plaintiffs were the deceased's parents Chester G. Bond, III, and Dorothy Bond. Chester G. Bond, III, died subsequent to the filing of suit and his heirs, Dorothy Bond and Virginia Phie Bond Maddox, their daughter, were substituted as plaintiffs for Mr. Bond.
[2] Reeves v. Gulf States Utilities Co., 312 So.2d 118 at p. 121.