611 So.2d 147 (1992)
BUDGET RENT-A-CAR OF NEW ORLEANS, et al., Plaintiffs-Appellants,
v.
Jeffery J. GRADNIGO, et al., Defendants-Appellees.
No. 91-1125.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
*148 James Donovan, Jr., Metairie, for plaintiff-appellant Budget.
Nicholas Gachassin, Lafayette, for plaintiff-appellee Watts.
Robert M. Mahony, Lafayette, for defendant-appellee CUI.
Nan Landry, New Iberia, for defendant-appellee Nationwide Ins.
Before GUIDRY, DOUCET and WOODARD, JJ.
WOODARD, Judge.
The issues on appeal are whether the trial court erred (1) in accepting an expert witness; (2) in failing to allow a deposition of a witness who was allegedly unavailable; (3) in the assessment of fault between defendants; (4) in refusing to hold the record open for further testimony; and (5) in awarding excessive damages.
This suit arises from a claim for property damages sustained when Wendel N. Butler (Butler), while driving a rental van, almost collided with a left turning motorist, Jeffrey Gradnigo (Gradnigo) and then lost control of his vehicle which overturned. Suit was filed by Budget Rent A Car of New Orleans (Budget), the rental agency, against Gradnigo's employer, Gary Ruddick Construction Company, Inc. (Ruddick), and Commercial Union Insurance Company (Commercial Union), Ruddick's insurer. Later, suit was filed by Sarah L. Watts (plaintiff, a guest passenger), against Butler, Butler's insurer, Nationwide Insurance Company (Nationwide), Budget, Gradnigo, Ruddick and Commercial Union for personal injuries she sustained in the accident. *149 Upon motion by Budget, the cases were consolidated for trial.[1]
Trial was held on May 7, 1991, and judgment was rendered on June 18, 1991. The trial judge set forth his reasons orally, apportioning Butler, Budget and Nationwide with 65% fault and Ruddick and Commercial Union with 35%. Damages were assessed, including an award to Watts for loss of wages, past medical expenses, and pain and suffering.
Budget and Butler timely appeal this judgment.

FACTS
On March 20, 1989, Watts was a guest passenger in a Dodge van owned by Diversified Services, Inc., which was being leased by its subsidiary corporation, Budget Rent A Car of New Orleans, Inc. Wendel N. Butler, Jr. was driving the van in a northerly direction on U.S. Highway 167 in Vermilion Parish, Louisiana. Watts, who lived in Pennsylvania, was en route to Louisiana to watch her son play in a basketball tournament.
Jeffrey Gradnigo, who was driving a Dodge 6000 truck owned by his employer Ruddick Construction Company, Inc., was ahead of Butler and traveling in the same direction on Highway 167.
Conflicting testimony was given as to whether Gradnigo properly activated his left turn signal before executing a left turn onto Parish Road 3-26. As Gradnigo began his left turn maneuver, Butler had started to pass Gradnigo and had to apply his brakes to avoid a collision. As a result, the van Butler was driving skidded approximately 145 feet across the south bound lane and through the intersection into an embankment. The van flipped over, landed on its right side and traveled approximately 58 more feet before it came to rest in an adjacent field.
As a result of the accident, Watts' arm was pinned under the van and the van had to be lifted to free her. Besides injury to her arm, Watts hit her head on top of the van while the van was rolling, and her shoulder and neck were sore and bruised. Watts was taken to the emergency room where she was examined and was given a cervical collar to wear.
Watts had come to Louisiana from her home in Pennsylvania to watch her son play in a basketball tournament. Because of her injuries, she was confined to a hotel room for three days and was unable to see her son play in the tournament.
Watts returned home by train and stayed out of work for four days. There, she was under the care of Dr. Paul Epstein for about four months and was given physical therapy. She was placed on light duty work on her job as a nurses aid for approximately ten months. At the time of trial, Watts was still suffering from headaches and her arm is permanently scarred as a result of the accident.

EXPERT WITNESS
Appellants first contend that the trial court erred in accepting the investigating officer, Trooper Glenn M. Stutes as an expert witness due to his insufficient training or experience in accident reconstruction.
In Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, at page 151 (La.App. 3 Cir. 1990), writ denied 565 So.2d 450 (La.1990). This court stated the criteria to be considered when deciding whether to permit the use of expert testimony:
"`To warrant the use of expert testimony, two elements are required; these concern the subject of the expert's opinion or inference, and the qualifications of the tendered witness, respectively. First, "the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the understanding of the average laymen". State v. Wheeler, 416 So.2d 78, 80 (La.1982) (emphasis added.) *150 Second, "the witness must have sufficient skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth." Id.; McCormick on Evidence § 13 at 33 (Cleary 3d ed. 1984). The inquiry is: "On this subject can a jury receive from this person appreciable help?" J. Wigmore, Evidence § 1923 at 29 (Chadbourn rev. 1978) (emphasis in original). If not, the testimony is superfluous, and is excluded to save time and avoid confusion. Id., § 1918 at 11.
* * * * * *
"A trial judge has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible; his judgment will not be disturbed on appeal unless manifestly erroneous. See State v. Trosclair, 443 So.2d 1098, 1105 (La.1983); Brown v. Morgan, 449 So.2d 606, 608 (La.App. 1st Cir.1984)." (Footnotes omitted.) Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, at pages 458-459 (La.App. 1 Cir.1987), writ den., 520 So.2d 750 (La.1988).'"
The general rule as to qualification and allowance of experts was set out in Carvell v. Winn, 154 So.2d 788, at page 791 (La. App. 3 Cir.1963), as follows:
"[W]hether or not a witness meets the qualifications to testify as an expert is largely within the discretion of the trial judge. In our opinion, it is also largely within the discretion of the trial judge to determine the competency of expert witnesses to testify to specialized areas of inquiry not necessarily within his general competency to give an opinion as an expert, or at least not shown to be so by the facts of the record. That is, the trial court is not under a mandatory duty to permit an expert witness to testify to any matter upon which the expert himself says he is qualified to give an expert opinion; the court must have some discretion to limit the witness's testimony as an expert to the actual field of his expertise and as applicable to the facts of the particular litigation, then before it (subject of course to a showing that the court abused its discretion in this regard, State v. Carter, 217 La. 547, 46 So.2d 897.)
`Thus, referring to the ability of a witness to testify as an expert based upon his "experiential capacity", Dean Wigmore noted that "The capacity is in every case a relative one, i.e., relative to the topic about which the person is asked to make the statement * * *'"
In the case sub judice, the trial court accepted Officer Stutes as an expert. Officer Stutes had been previously accepted as an expert witness in the same court in the field of accident investigation and reconstruction. He was a senior officer with the State Police, and had worked for them for approximately 11 years. Officer Stutes had investigated between 1,000 and 1,600 accident cases and had received training in traffic accident investigation, advanced accident technical investigation as well as accident reconstruction. We cannot say that the trial court was manifestly erroneous in his decision to accept Officer Stutes as an expert witness.

DEPOSITIONAL TESTIMONY IN LIEU OF LIVE TESTIMONY
Appellants next contend that the trial court erred in disallowing the deposition of Butler when Butler refused to appear at trial. They contend that Butler should be considered unavailable and his deposition should be used in lieu of his live testimony.
La.C.C.P. Art. 1450 in pertinent part states:
"A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
* * * * * *

*151 (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) That the witness is unavailable;"
In light of the fact that trial had been fixed for six months, that appellants' attorney was informed by the attorney for Gradnigo that he would not agree to stipulate to the introduction of Butler's deposition in lieu of his live testimony, and that ample time was given for arrangements to be made for a telephone deposition, we do not feel that the trial court has abused its discretion in not allowing the deposition to be used.

MOTION FOR CONTINUANCE
Defendants contend that the trial court erred in not allowing the record to remain open for the purpose of obtaining testimony from a material witness and this should be treated as a motion for continuance pursuant to La.C.C.P. Art. 1602.
The record reflects that defendant Butler refused to appear at trial. No reason was given by his attorney other than he lived in Pennsylvania. The record also shows that the trial had been set for six months in advance and that Butler's attorney was told Butler's deposition could not be accepted. Ample time was provided to secure Butler's testimony, if not in person, then at least by setting up a telephone deposition. Therefore, we conclude the trial court did not abuse its discretion in not allowing the record to remain open.

ASSESSMENT OF FAULT
Appellants next contend that the trial court erred in assessing Butler with 65% fault and Gradnigo with only 35% fault. Appellants urge that, if Butler had any degree of fault in the accident, it should not be more than 30%.
Walton v. Bellard, 581 So.2d 307, at pages 311-312 (La.App. 1 Cir.1991), writ denied 585 So.2d 567 (La.1991), discusses the allocation of fault as follows:
"It is well settled that the allocation of comparative negligence is a factual matter, and such determination will not be disturbed on appeal unless it is clearly wrong or manifestly erroneous. Varnado v. Continental Insurance Company, 446 So.2d 1343, 1345 (La.App. 1st Cir. 1984).
In determining the percentage of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacity of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967, 974 (La. 1985)."
Viewing the nature of the conduct of the parties, we must consider the duties of motorists when making left turns and the duties of passing motorists. Natchitoches Motors v. Travelers Ins. Co., 372 So.2d 811, at pages 813-814 (La.App. 3 Cir.1979), states:
"It is well settled that a left-turn movement is generally characterized as a dangerous operation, not to be undertaken until the motorist ascertains that it can be made in safety. LSA-R.S. 32:104.
* * * * * *
In judging whether a left turn can be made in safety, the motorist has the right to assume that a following motorist will observe all the duties imposed upon him by law and common sense. Thus, he may assume that the following motorist will proceed within the speed limit and will not cross over a yellow line in his traffic lane marking a `no passing' zone and, moreover, will keep a proper lookout. Breland v. American Insurance Company, 163 So.2d 583 (La.App. 2nd *152 Cir.1964), writs refused 246 La. 379, 164 So.2d 362 (1964)."
The evidence in the record indicated, and the trial judge noted in his reasons, that Butler was traveling at the posted speed limit of 45 mph while he followed Gradnigo, but, at the time of the accident, based on the 145 feet of skid marks, Butler's estimated speed was 60 mph, which was well over the posted speed limit. Gradnigo testified he had slowed to 15 mph as he approached the intersection of Highway 167 and Parish Road 3-26 in anticipation of making the left turn and, prior to making the turn, he activated the left turn blinker. This should have cautioned Butler to be on the alert but Butler attempted a passing maneuver on the left hand side just as Gradnigo was making his left turn. When Butler realized the truck was turning left, he applied brakes and began to skid. He lost control of the van, crossed into the southbound lane and struck an embankment. The van flipped over one and one-half times and came to rest in a field.
After a thorough review of the record and the actions of both motorists, we conclude that the trial court was not manifestly erroneous in its allocation of 35% fault to Gradnigo and 65% to Butler. The trial court's findings are affirmed.

DAMAGES
Next, appellants contend that the trial court erred in awarding plaintiff $15,000.00 for pain and suffering, which included physical, mental, past, present, and future, and, also, disfigurement of plaintiff's arm. In reviewing an award of damages, Jaffarzad v. Jones Truck Lines, Inc., supra, at page 153 states:
"LSA-C.C. Art. 2324.1 provides:
`In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.'
Before this court can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Wattigny v. Breaux, 488 So.2d 419 (La.App. 3 Cir.1986). In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must first look to the individual circumstances of the case before it. Broussard v. Peltier, 479 So.2d 679 (La.App. 3 Cir. 1985). Only after an analysis of the facts reveals an abuse of discretion can the appellate court disturb the award, then only to raise inadequate awards to the lowest amount the trial court could have reasonably awarded, or lower excessive awards to the highest amount the trial court could have reasonably awarded. Reck v. Stevens, 373 So.2d 498 (La. 1979); Coco, supra; Clark v. State Farm Ins. Co., 520 So.2d 860 (La.App. 3 Cir.1987); Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3 Cir.1985)."
The record shows that plaintiff suffered the trauma of rolling in the van one and one-half times, having her arm pinned underneath the van until the van was lifted and she was freed, and missing her son play basketball, which was her reason for being in Louisiana in the first place. Plaintiff suffered injuries to her head, neck, left shoulder and her arm. She had to wear a cervical collar and take physical therapy. She was placed on light duty at her job as a nurses aid and continued to suffer from headaches up until trial. Her left arm is permanently scarred and the only remedy is surgery.
Considering the above, we find no error in the award of $15,000.00 to plaintiff for pain and suffering.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants, Budget Rent A Car of New Orleans and Wendel M. Butler, Jr.
AFFIRMED.
NOTES
[1] The cases remain consolidated on appeal and, since both cases involve the same litigation in the trial court and involve substantially the same issues and applicable law, our opinion herein will be applicable, but we will issue a separate judgment in the appeal entitled Watts v. Gradnigo, 611 So.2d 153 (La.App. 3 Cir.1992).